**Joe GRIFFITH, Appellant,**

v.

**Mae Aarons JONES, Appellee.**

**No. 799.**

Court of Civil Appeals of Texas, Tyler.

Dec. 31, 1974.

Rehearing Denied Jan. 30, 1975.

Ramey, Flock, Hutchins, Grainger & Jeffus, Mike Hatchell, Tyler, for appellant.

Potter, Lasater, Guinn, Minton & Knight, Weldon McFarland, Tyler, for appellee.

DUNAGAN, Chief Justice.

This is a suit arising out of an inheritance dispute between plaintiff-appellant Joe Griffith and appellee Mae Aarons Jones concerning the ownership of one share of stock in "The Country Club" of Tyler. Champ Jones was the father of Walter Jones and Fleida Jones Griffith, who was the mother of appellant Joe Griffith wife of Walter Jones.

Champ Jones was owner of a share of stock in "The Country Club" of Tyler, Texas (also known as "Lake Park"). During his lifetime, by either gift or sale, Champ Jones executed a transfer of his share of stock to Walter Jones. Subsequently Walter Jones married Mae Aarons and they lived as man and wife without children until Walter's death in August of 1973.

Walter Jones died intestate and, at the time of his death, possessed the share of stock in the club. The only survivors for the purposes of descent and distribution were his widow, Mae Aarons Jones, and nephew, Joe Griffith.

The "Country Club" is and has been a valid Texas business corporation for many years. The by-laws of the "Country Club" provide that "Any member desiring to build a boat house or cottage on the club premises shall first get permission and a location from the Board of Directors * * * ." Pursuant to that by-law, many members have obtained a specific location and have built cottages and boat houses on their locations. The value of each individual share in the "Country Club" is not uniform, but varies with the quality of improvements on the lot to which the share relates if the owner of the share has obtained a specific location.

Appellant brought suit to recover a one-half interest in the lake lot alleging that the ownership of the lake lot was merely evidenced by the share of stock and that the lake lot was inherited by him according to the laws of descent and distribution upon the intestate death of his uncle, Walter Jones. The appellee answered by a general denial and also a cross action with which we are not concerned.

In a trial without a jury, the court entered judgment decreeing the share of stock to be the sole and separate property of appellee, Mae Aarons Jones. We affirm.

The question presented on appeal is whether the share of stock in "The Coun-

try Club" is personal property, which would descend in toto to Mae Aarons Jones, or real property, one-half interest of which would descend to Mae Aarons Jones and one-half interest of which would descend to Joe Griffith.

Shares of corporate stock are personal property in the nature of choses in action. Benson v. Greenville Nat. Exchange Bank, 253 S.W.2d 918, 928, 929 (Tex.Civ.App., Texarkana, 1952, writ ref'd., n. r. e.); Automobile Mortgage Co. v. Ayub, 266 S.W. 134, 135 (Comm. of App. 1924, n. w. h.) and cases there cited; Parker v. Mona-Marie Trust, 278 S.W. 321, 323 (Tex.Civ.App., Fort Worth, 1925, n. w. h.); Bergin v. Bergin, 312 S.W.2d 409, 412 (Tex.Civ.App., Texarkana, 1958), revised on other grounds, 159 Tex. 83, 315 S.W.2d 943; Cummings v. People, 211 Ill. 392, 71 N.E. 1031, 1034 (1904); Rain, Technical Observations Concerning the Pledge of Corporation Shares, 30 Texas L.Rev. 684, 686; 14 Tex.Jur.2d, Corporations, sec. 141 at 262; 18 C.J.S. Corporations § 194, at 622. "Property rights which descend and are distributed as personal property include shares of stock in a corporation, although they may represent an interest in either realty or personalty * * *." 26A C.J. S. Descent & Distribution § 9, at p. 540. "The Country Club" is a valid Texas business corporation authorized in its by-laws to issue shares of stock. At the time of his death, Walter Jones possessed one share of stock. Applying the rationale of the cited cases, the share of stock is personal property and would descend in toto to Mae Aarons Jones.

Article 2.23 of the Texas Business Corporation Act, V.A.T.S., provides that "The bylaws may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation." The by-laws of a corporation govern cases to which they are applicable. International Bldg. & Loan Ass'n v. Abbott, 85 Tex. 220, 20 S.W. 118 (1892). The following provisions, as well as other provisions of the by-laws, reveal that the shareholders do not own but merely have a right to use the corporation's land as long as they abide by the requirements set forth in the by-laws.

"BY-LAWS

\*    \*    \*    \*    \*    \*

"SEC. 8. All persons who are now stockholders in the club are hereby declared to be members of same and no person not already a member shall become such except upon written application after he has been duly recommended by as many as three (3) members of the club in good standing. * * *

"SEC. 9. No member can sell his stock in this club without first offering said stock to this club at its market value.

"SEC. 10. No member shall sell a share of stock in this club without first presenting to this club the name of the proposed purchaser with his application for membership, which application shall be voted on in the manner heretofore prescribed.

"SEC. 11. Under no circumstances shall any one be allowed club privileges until he is elected a member of the club and it shall be the duty of the Board of Directors to prosecute anyone not a member of the club for trespassing.

\*    \*    \*"

"PRIVILEGES OF THE CLUB

"Any member desiring to build a boat house or cottage on the club premises shall first get permission and a location from the Board of Directors thru the Secretary and shall make such determination known in writing. The Secretary shall keep a permanent record of such permission and location. No member will be allowed more than 100 feet of lake frontage for cottages or boat house and all buildings and fences must be confined within two parallel lines run-

ning at right angles from the water front, and 100 feet apart. A member must build on location within 12 months or forfeit claim to location.

"Any structure or improvements placed on the property of the club by a member shall be and remain personal property and shall not become a fixture attached to vality of the club. Such member shall have the privilege of removing such structure or improvement or personal property that they might place on the premises of the club at any time and is retroactive and shall apply to all members now owning or having such personal property on the premises of the club."

## "AMENDMENTS TO BY-LAWS, RULES AND REGULATIONS TO MAY 1952

\* \* \* \* \* \*

"Amendment to Sec. No. 10.

"In the event of the death of a member and the share passes by inheritance or by will to another person he will be received into the club by approval of the Board of Directors. Should the person be of such character as to be unworthy of membership and if five (5) members in good standing sign a petition for his expulsion it shall be the duty of the Directors to put the transfer to a vote of the club. The vote shall be held secret the same as other ballots. Should five (5) members in good standing vote to reject the applicant it shall then be the duty of the Directors to deprive such persons of the privileges of the club and he be given notice to sell his stock to the club or some acceptable new member."

■ Where a case is tried without a jury, and no findings of fact or conclusions of law are filed, the judgment should be affirmed if there is sufficient evidence to support it upon any lawful theory, and every issue raised by the testimony must be resolved in support of the judgment. Holi-

day Lodge Nursing Home, Inc. v. Huffman, 430 S.W.2d 826, 827 (Tex.Civ.App., Texarkana, 1968, no writ); John F. Buckner & Sons v. Allen, 272 S.W.2d 929 (Tex. Civ.App., Austin, 1954, writ dism'd.). In the absence of findings of fact and conclusions of law, the trial court's judgment implies all necessary fact findings in support of the judgment. In seeking to determine whether there is any evidence to support the judgment and implied findings of fact, it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in nature. Alamo Express, Inc. v. Browning Mineral & Ore Company, 457 S.W.2d 588, 590 (Tex.Civ.App., San Antonio, 1970, writ ref'd., n. r. e.); Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S. W.2d 609 (Tex.Sup.1950); North East Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795 (1949).

The record establishes that the "Country Club" conducted business as a corporation and met all legal requirements of a corporation. Harry L. Johnson, a witness called on behalf of appellant, testified that "The Country Club" was a corporation; that he was a past officer of the corporation; and that there were annual meetings of the stockholders and the Board of Directors. Jess Tolbert testified that the corporation was fifty years old in 1957; that he personally knew that the corporation had held annual directors' and stockholders' meetings for the last twenty-five years because he had been there; that corporate records were maintained; that the corporation paid ad valorem taxes on the real estate in question; and that the corporation paid annual franchise taxes.

The record establishes that the ownership in the "Country Club" was stock and not a common ownership of real property. Harry Johnson testified that when he purchased an interest in "The Country Club," he received a stock certificate and a bill of sale, but no deed and no lease. A. B. Curtis testified that when he bought an interest in "The Country Club," he bought a

share of stock. Jess Tolbert, long-time corporate secretary, testified that he owned one share of stock and some improvements, but that he did not own any real estate; and that no shareholder of the corporation held any deed or lease to any of the real estate belonging to the corporation. Harry Johnson testified that the corporation owned the area of land and water in question and that the corporation was never granted the right to partition its land. A. B. Curtis testified that he paid taxes on his real estate in town, but that he did not pay any real property taxes on the interest that he owned in "The Country Club."

After considering only the evidence most favorable to the implied findings and judgment, we hold that the trial court's implied finding that the share of stock was personal property and judgment that the stock descended in toto to Mae Aarons Jones has support in the evidence. All of appellant's points of error have been considered and are overruled.

The judgment of the trial court is affirmed.