In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-99-145 CV


____________________



WILLIAM D. BROSSEAU, Appellant



V.



DENNIS R. RANZAU, Appellee






On Appeal from the 253rd District Court


Liberty County, Texas


Trial Cause No. 43911






OPINION


 On motion for rehearing, our prior opinion was withdrawn. The following opinion
is substituted in its place. 

 Appellee Dennis R. Ranzau ("Ranzau") and appellant William D. Brosseau
("Brosseau") expressed interest in a house ("Casa T") in Acapulco that was being offered
for sale by John Ballis ("Ballis"). Brosseau and Ranzau met with Ballis and negotiated the
sale of the house. During the course of the negotiations, it became apparent that the house
was the sole asset of a Canadian corporation, 80451 Holdings, Ltd. ("80451"). 

 Brosseau and Ranzau each agreed to pay Ballis $60,000 down and co-sign a
promissory note for $800,000. Ranzau testified Brosseau did not have time to draw up the
partnership papers, so with Ranzau's permission the funding of the transaction went
through one of Brosseau's companies, Argos Properties, Inc. ("Argos"), with the sole
outstanding share of stock, certificate no. 8, placed in Argos. Ballis and Argos, through
its president Brosseau, signed a Stock Purchase and Sale Agreement that recited, among
other things, that Ballis owned all the stock in 80451 and that all the shares were
represented by a single certificate, no. 8. After a tangled web of financial restructuring,
the parties ultimately negotiated a deal that resulted in the $800,000 promissory note
becoming pledged to First State Bank of Liberty ("First State"). 

 Ranzau soon became concerned that Brosseau was not accounting for the expenses
and income of Casa T, which rented for $1,500 a day. In spite of numerous requests from
Ranzau, Brosseau allegedly failed to provide receipts for the substantial expenses he
claimed were being expended on the house. On one occasion, Ranzau's wife was
embarrassed and angered when she and some of her friends were locked out of the house
by an agent of Brosseau. Ranzau filed this lawsuit claiming breach of the partnership
agreement, breach of a partner's fiduciary duty, and fraud; he also requested an
accounting, declaratory relief, injunctive relief, and the appointment of a receiver. Ranzau
relied on an oral partnership agreement and various letters and documents. 

 In April 1989, the trial court appointed a receiver to take charge of the partnership
property during the dispute. While the lawsuit was pending, the FDIC took over as
receiver for First State and the case was removed to federal court. The case was
eventually remanded back to state court following payment of $600,000 to the FDIC. As
part of a settlement agreement, Brosseau, Argos, and 80451 conveyed stock certificate no.
8 and Casa T to the FDIC by "Quitclaim Deed and Agreement Respecting Collateral." 
Ultimately, the FDIC conveyed the property in similar fashion to the state court receiver. 
In April 1991, Teresa Brosseau claimed she owned the Brosseau/Argos interest in the
property, and on that basis she filed an intervention in the state court lawsuit. 

 The case was heard in a bench trial in May 1991. In November 1991, the trial
court entered an interlocutory judgment for Ranzau and ordered Brosseau to pay
$107,196.76 in actual damages and $200,000 in exemplary damages, plus attorney's fees. 
The interlocutory judgment also found that a partnership existed between Ranzau and
Brosseau/Argos, and that on the date Ranzau filed the suit, Ranzau and Brosseau/Argos
owned the stock and assets of 80451 as tenants in partnership. On August 7, 1992, after
finding that Brosseau had diverted rental income and intentionally violated court orders,
the trial court ordered the receiver to sell the property. 

 Between the onset of litigation in 1989 and the 1998 final judgment, other events
occurred that appeared to place ownership of the property in one person. On October 8,
1991, some seven months after the interlocutory judgment, Brosseau filed for Chapter 11
bankruptcy. The bankruptcy was later converted to a Chapter 7 bankruptcy. For the
purpose of liquidating the assets of the estate, the bankruptcy court appointed a trustee. 
On February 1, 1994, the trustee sold ownership of the bankruptcy estate's interest, if any,
in 80451 and Casa T to Ranzau. During the pendency of the bankruptcy estate and the
instant suit, divorce litigation between Teresa Brosseau and William Brosseau proceeded
in a district court in Dallas County. On Teresa Brosseau's motion, the bankruptcy court
lifted the stay in November 1992 to allow the district court in Dallas to enter orders
regarding, among other things, the preservation of the marital estate, property of the
bankruptcy estate, custody and use of property, and characterization and division of
property. While the divorce suit was pending, Teresa and the trustees of one of the
children's trusts agreed to convey to Ranzau any interest they had in the stock of 80451
Holdings and Casa T. Meanwhile, pursuant to the trial court's order in the district court
in Liberty County, the receiver executed a Bill of Sale and a Quitclaim Deed on April 16,
1994, in which the stock and Casa T were conveyed to Ranzau. By the middle of 1994,
it appeared that Ranzau had acquired the existing rights to 80451 and Casa T. However,
in September 1994, the Dallas County district court entered a divorce decree in the
Brosseau divorce proceeding that declared the trust's conveyance to Ranzau was not
effective and that the stock in 80451 and Casa T were the property of the Brosseaus'
children. 

 In addition to the complexities described above, there were recusal issues in the
Liberty County case. In September 1991, Brosseau filed a motion to recuse the state trial
judge. The first recusal motion in September 1991 was not verified as required by Rule
18a(a) of the Texas Rules of Civil Procedure, and the trial court refused to refer it to the
presiding judge. Brosseau filed a second, properly verified motion to recuse on September
9, 1992. No action was taken on the motion. Ultimately, Brosseau appealed, and in 1995
this court issued an opinion concluding the trial judge violated Rule 18a by failing to
address the recusal motion. See Brosseau v. Ranzau, 911 S.W.2d 890, 893 (Tex. App.--Beaumont 1995, no writ). On December 5, 1997, Brosseau's second motion for recusal
was finally heard and denied. Brosseau appealed to this court for a second time; he
claimed he did not receive sufficient notice of the December 5, 1997, recusal hearing. See
Brosseau v. Ranzau, 28 S.W.3d 235, 238 (Tex. App.--Beaumont 2000, no pet.). Finding
that notice had been inadequate and that all actions taken by the judge after the violation
of Rule 18a were void, this court abated the appeal for a second recusal hearing. Id. at
238-40. Another hearing on the motion to recuse was held in February 2001, and the
motion was again denied. As we explain below, the motion to recuse, which resulted in
considerable delay and two appellate opinions, had no merit. 

 Meanwhile, in August 1996 a court in Mexico held that the stock in 80451 was
owned by the Brosseau [Children's] Trust and Desarrollo Turistico Alexa, S.A. de C.V.
(Alexa Tourism Development) (hereafter "DTA"), a Mexican corporation. The Mexican
judgment was affirmed by the Superior Court of Justice of the Tabares Judicial District on
December 12, 1996. 

 After a decade of litigation, the court below considered competing motions for
summary judgment and issued a final judgment declaring that the court was of the opinion
that plaintiff Dennis Ranzau is the sole owner of all interests in the single share of stock
which constitutes 80451 Holdings, Ltd. The 1998 final judgment ordered the court-appointed receiver of 80451 and its holdings to transfer all the property and assets of the
receivership, including share certificate no. 8, any partnership interest in Casa T, and any
claims against third parties, to Ranzau. Pursuant to the 1991 interlocutory judgment,
which was incorporated into the 1998 final judgment, the trial court also ordered that
intervenor Teresa Brosseau, ex-wife of defendant William Brosseau, take nothing and
awarded Ranzau actual damages of $107,196.76 and exemplary damages of $200,000 plus
attorney's fees. 

 Brosseau now asks us to consider eighteen separate issues. We overrule sixteen
issues and sustain two. We explain the basis for our conclusion on each issue raised.

Reverse and Render Issues


(Issues One Through Four)



 The parties filed competing motions for summary judgment in 1998, and the trial
court rendered a final judgment that, in effect, granted Ranzau's motion and denied
Brosseau's. When parties file competing summary judgment motions, and one is granted
and the other denied, the appellate court must review the summary judgment evidence
presented by both sides and determine all questions presented. See Commissioners Court
of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). Brosseau's first four issues
present arguments he says entitles him to rendition of judgment in his favor. 

The Mexican Judgment


 Issue one relates to the 1996 Mexican judgment, which provides that the Brosseau
(Children's) Trust and DTA are the legitimate stockholders of 80451 and that Ranzau is
not and never has been a stockholder in 80451. Brosseau claims that the Mexican
judgment conclusively established the ownership of the property, and that Ranzau's
summary judgment motion was collaterally estopped by the Mexican judgment. 

 Brosseau attached as summary judgment evidence the Mexican lower court's
judgment and the opinion of the Superior (appellate) Court of Justice of the Tabares
Judicial District affirming the judgment, along with English translations. The appellate
opinion styles 80451 Holdings as the plaintiff and lists Ranzau, Jay Arnold (the receiver
appointed by the district court in Liberty County), and several Mexican banks, government
officials, and notaries public as defendants. 

 We first note that the Mexican judgment rests in significant part on the proposition
that courts in the United States cannot adjudicate title to Mexican real estate. However,
the principal contested issue here, as below, is who owns stock certificate no. 8, or, in
other words, 80451. In Texas, stock is considered personal property, even when the
underlying corporation itself owns real property. See Evans v. Prufrock Restaurants, Inc.,
757 S.W.2d 804, 805-06 (Tex. App.--Dallas 1988, writ denied) ("[T]he transaction was
the sale of a personalty rather than realty. . . . It is a well established fact that the sale of
stock is personalty not real estate."); Griffith v. Jones, 518 S.W.2d 435, 437 (Tex. Civ.
App.--Tyler 1974, writ ref'd n.r.e.) ("Shares of corporate stock are personal property in
the nature of choses in action."). United States federal courts have recognized and applied
this rule of Texas law. See Engel v. Teleprompter Corp., 703 F.2d 127, 131 (5th Cir.
1983) ("Under Texas law, shares of corporate stock are personal property."). Our
jurisdiction to adjudicate this case is not based on any claim to jurisdiction over Mexican
real estate; it is based on our jurisdiction over Ranzau and Brosseau, two Texas residents,
and their conflicting claims concerning stock certificate no. 8 and 80451.

 The doctrine of collateral estoppel applies when an issue decided in the first action
(1) is actually litigated in the first action, (2) is essential to the prior judgment, and (3) is
identical to an issue in a pending action. Texas Dep't of Pub. Safety v. Petta, 44 S.W.3d
575, 579 (Tex. 2001). Because collateral estoppel is an affirmative defense, Brosseau, the
party asserting it, had the burden of pleading and proving its elements. See In re H.E. Butt
Grocery Co., 17 S.W.3d 360, 377 (Tex. App.--Houston [14th Dist.] 2000, orig.
proceeding). Whether collateral estoppel is to be applied is a question of law for the
court. Id. By contending that the issue has already been litigated to a final judgment in
a court in Mexico, Brosseau seeks to apply the doctrine of collateral estoppel through a
foreign country judgment and prevent Ranzau from litigating the issue here.

 In 1995, 80451 sued Ranzau in Mexico; this was some six years after Ranzau filed
his 1989 suit against Brosseau in Liberty County over the ownership and control of stock
in 80451. As pointed out above, an interlocutory judgment was entered in the trial court
below in November 1991; no final judgment was rendered herein until December 22,
1998. Brosseau contends the 1996 judgment in the Mexican court serves to preclude the
effect of the 1998 judgment herein on the same issue. 

 We first consider Ranzau's contention that the Mexican judgment is not
recognizable under the Uniform Foreign Country Money-Judgment Recognition Act 
("UFCMJRA"or "Act"). See Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001-36.008
(Vernon 1997). UFCMJRA pertains to a money judgment, and Brosseau is not asking us
to enforce that portion of the Mexican court's judgment requiring Ranzau to pay damages
to 80451. Technically, the case does not fall within the parameters of the Act. 
Nonetheless, UFCMJRA is useful here, as persuasive if not binding authority. 

 UFCMJRA is in some respects a codification of the principles of comity and in that
sense reflects public policy on the preclusive effect to be given foreign litigation. See
generally David Henry, Run From the Border: The Need for Recognition of Foreign-Commercial Judgments in Texas Courts, 31 Tex. Tech. L. Rev. 211, 217 (2000) ("Texas
codified the doctrine of comity when it adopted the [UFCMJRA] . . . ."). One underlying
principle of comity and, by inference, the UFCMJRA, is the "convenience, and the need
for an orderly procedure in resolving jurisdictional disputes." See Miles v. Ford Motor
Co., 914 S.W.2d 135, 138 (Tex. 1995) (Dominant jurisdiction rule applies to appellate
court level, as well as trial court level, and is grounded on principles of comity,
convenience, and need of orderly procedure in resolving disputes.). Under Texas common
law, "the court in which suit is first filed acquires dominant jurisdiction to the exclusion
of other coordinate courts." Id. (quoting Curtis v. Gibbs, 511 S.W.2d 263, 267 (Tex.
1974)). As part of the dominant jurisdiction principle, the "first to file" doctrine has
applicability in the instant case as a general comity principle. Principles of comity would
allow the trial court, and this court, to conclude that giving estoppel effect to a judgment
obtained in a proceeding filed some six years after the court below exercised jurisdiction,
and appointed a receiver, would be unwarranted.

 Considering their instructive role in this case, we now turn to the specific provisions
of the UFCMJRA. Section 36.005 sets forth three mandatory and seven discretionary
grounds for nonrecognition of foreign country judgments. See Dart v. Balaam, 953
S.W.2d 478, 480 (Tex. App.--Fort Worth 1997, no pet.). Ranzau specifically directs us
to three of the discretionary subdivisions of section 36.005. 

 § 36.005 Grounds for Nonrecognition

 . . . .

 (b) A foreign country judgment need not be recognized if:

 . . . .

 (4) the judgment conflicts with another final and conclusive judgment;

 

 (5) the proceeding in the foreign country court was contrary to an
agreement between the parties under which the dispute in question
was to be settled otherwise than by proceedings in that court;

 

 . . . .


 (7) it is established that the foreign country in which the judgment
was rendered does not recognize judgments rendered in this state that,
but for the fact that they are rendered in this state, conform to the
definition of "foreign country judgment." 


Tex. Civ. Prac. & Rem. Code Ann. § 36.005(b)(4), (5), (7) (Vernon 1997). 

 Under subsection b(4), a trial judge need not recognize a foreign country-money
judgment if it conflicts with another final conclusive judgment. Here, the 1996 Mexican
judgment conflicts with the earlier 1994 United States bankruptcy order. (1) On January 12,
1994, the bankruptcy court entered an order authorizing the (Brosseau) bankruptcy trustee
to convey to Ranzau any interest of the bankruptcy estate in Casa T and the stock of
80451. Although Brosseau maintains he never claimed, and, moreover, does not now
claim, any interest in Casa T or 80451, the trustee recited in the "Trustee's Motion to Sell
Property or Potential Property of the Estate . . ." that Brosseau had filed financial reports
with the trustee that reflected an ownership in 80451. (2) The bankruptcy trustee executed
a bill of sale on February 1, 1994, that conveyed to Ranzau all rights and titles which the
Brosseau bankruptcy estate might own in the following:

 (a) the capital stock of 80451;

 (b) any claim, action, or suit against Ranzau, including, but not limited to any claim 

 arising in connection with Casa T;

 (c) any claim, action, or suit against Jay Arnold, individually and as 
Receiver, in this case;

 (d) any claim, action, or suit by, through, or against Teresa Lucas Brosseau
which forms the basis of any interest she may have in and/or could assert to
or against Casa T or Ranzau; and

 (e) any partnership interest in any partnerships that have or had an interest
in the Casa T. 


In addition to the bill of sale, the bankruptcy trustee also executed that same date a
quitclaim deed conveying Casa T to Ranzau. 

 Although Brosseau contends otherwise, the bankruptcy order authorizing the
conveyance to Ranzau of Brosseau's interests constitutes a final order. See Blum v.
Restland of Dallas, Inc., 971 S.W.2d 546, 551 (Tex. App.--Dallas 1997, pet. denied) (In
the bankruptcy context, "final" is given a more liberal interpretation than in other cases;
bankruptcy orders that authorize or confirm the sale of part of an estate or allow a proof
of claim are both considered final judgments.). The effectuation of the bankruptcy court
order by the trustee's conveyance of any interest owned by Brosseau in stock certificate
no. 8 to Ranzau is inconsistent with the Mexican judgment holding that Ranzau is not and
has never been a stockholder in 80451. On that ground alone, the trial court below did not
err in refusing to recognize the Mexican judgment and accord it collateral estoppel effect. 


 As noted herein, subdivision b(5) provides that a foreign judgment need not be
recognized "if the proceeding in the foreign country was contrary to an agreement
between the parties. . . ." During the time period between April 1989, when Ranzau filed
his petition in state court, and October 1995, when 80451 sued Ranzau in Mexico, 
Brosseau entered into various agreements, conveyances, and an agreed judgment
concerning Casa T and certificate no. 8, some of which we detail below: 

 (1) On June 14, 1990, Brosseau, Argos, and 80451 Holdings executed a
Stipulation and Compromise Agreement with the FDIC, whereby they agreed
to quitclaim any right, title, or interest which any of them have or may have
in Certificate No. 8 and Casa "T" to the FDIC. (In the agreement, Brosseau
was given an exclusive option to purchase Certificate No. 8.) 


 (2) On that same day, Brosseau, Argos, and 80451 Holdings executed a
quitclaim deed accomplishing the transfer and conveyance. 


 (3) To further effectuate the agreement and quitclaim, the United States
District Court (to which the FDIC had removed the suit) entered an Agreed
Judgment on June 27, 1990, that transferred, conveyed, and judicially
foreclosed to the FDIC all the interest of Argos Properties and Brosseau in
and to all rights evidenced by Certificate No. 8. The Agreed Judgment was
signed by the attorney for Brosseau, Argos Properties, and 80451 Holdings. 


 (4) On July 19, 1990, Brosseau and Ranzau were parties to an "Agreement
for Deposit of Funds and Authority for Receiver to Act" that was filed in the
state court's record. In that agreement, Brosseau acknowledged that he "is
and will be enjoined" from exercising the option to purchase certificate no.
8 and Casa T and further agreed, along with Ranzau, that Jay Arnold, the
court-appointed receiver, would purchase the certificate and the property. 


 (5) On July 25, 1990, the FDIC quitclaimed Casa T and assigned, sold, and
transferred certificate no. 8 to the receiver. 


 (6) The trial court entered an order dissolving the receivership on April 11,
1994, in which Jay Arnold, receiver, was ordered to convey to Ranzau by
bill of sale and quitclaim deed the stock in 80451 and Casa T. 


 (7) The receiver did so on April 16, 1994. 


As demonstrated by the detailing of the record above, the stock and Casa T were the
subject of various prior court orders and agreements leading to the conveyance of the stock
and Casa T to Ranzau. The document trail evidences a result that is inconsistent with the
Mexican court's declaration that Ranzau is not and never has been a stockholder in 80451
Holdings. 

 The Mexican judgment appears to be based, at least in part, on this court's prior
opinions wherein we declared void all orders entered by the trial court below after
Brosseau filed a motion for recusal. See Brosseau v. Ranzau, 911 S.W.2d 890, 893 (Tex.
App.--Beaumont 1995, no writ). Since we now find the trial judge did not err in refusing
to recuse himself, the orders are not void. (We address this in our analysis of issue
fourteen). Because it appears the Mexican court, through no fault of its own, based its
judgment on holdings by this court that have now been overturned, the Mexican judgment
need not be given collateral estoppel effect for that reason as well. Under both
subdivisions b(4) and b(5), the Mexican judgment need not be accorded collateral estoppel
effect. 

 As part of his collateral estoppel argument, Brosseau also directs us to the
September 14, 1994, Dallas district court judgment in the divorce of William Brosseau
and Teresa Brosseau. In the divorce decree, the Dallas district court found that the stock
in 80451 "was not conveyed [to Ranzau] by the Settlement Agreement signed by [Larry
Lucas and Laird J. Lucas,]" who were at one point the purported trustees of the Brosseau
Children's Trust. The Dallas court further found that "[Brosseau], as Trustee of the
Jordan and Alexa Brosseau Trust, a trust established by [Brosseau] for the benefit of the
minor children, has controlled and owned all interest in the stock of 80451 Holdings . .
. and all interest in . . . Casa T . . . and that all issued or authorized stock of 80451 . . .
and all interest in [Casa T] is owned by said Jordan and Alexa Brosseau." 

 The Dallas court judgment cannot be used to collaterally estop Ranzau. The
judgment does not reflect that Ranzau was ever a party to the Dallas litigation, and
Brosseau never claims Ranzau was. "[T]hose who never appeared in a prior action -- may
not be collaterally estopped without litigating the issue. They have never had a chance to
present their evidence and arguments on the claim. Due process prohibits estopping them
despite one or more existing adjudications of the identical issue which stand squarely
against their position." Blonder-Tongue Labs., Inc. v. University of Ill. Found., 402 U.S.
313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Brosseau further maintains the divorce
court's finding that the community estate owned no interest in the stock necessarily means
Brosseau's bankruptcy estate had no interest in the stock. We simply note that the
bankruptcy trustee's conveyance (by authorization of the United States bankruptcy court)
occurred February 1, 1994, some seven months prior to the September 14, 1994, divorce
judgment. The holding in the divorce judgment concerning Casa T and 80451 stock has
no effect on this suit or appeal and does not serve to collaterally estop the litigation herein. 

 For all of the reasons set out above -- the provisions of the UFCMJRA, the comity
principles of "first to file" and dominant jurisdiction, and the inapplicability of the
collateral estoppel doctrine -- the trial court did not err in refusing to render judgment for
Brosseau based on collateral estoppel. We overrule Brosseau's issue on collateral
estoppel.

Chain of Title


 In addition to his collateral estoppel ground, Brosseau contends the trial court
should have granted his motion for summary judgment because, as he urges, Ranzau's
evidence failed to show a complete "chain of title going back to 80451 Holdings . . . ."
Brosseau points to Ranzau's failure to produce the original stock certificate and also argues
that the quitclaim deeds relied on by Ranzau in his summary judgment motion fail to
convey anything without proof of a regular chain of title to its source. 

 There is no merit to Brosseau's argument. As detailed below, the chain of title
going into the partnership was established at the November 1991 bench trial, and the trial
court's interlocutory judgment expressly declared ownership of the property to be in the
partnership. During the 1991 trial, John Ballis testified he owned the stock in a Canadian
corporation (80451 Holdings), the only asset of which was Casa T. The Stock Purchase
Agreement shows Ballis as the seller of the only stock (certificate no. 8) in 80451
Holdings. Trial testimony reveals Ranzau and Brosseau agreed that the title to the stock
certificate would be taken either in Brosseau's name or in the name of Argos, a company
of which Brosseau was president; in addition, the documentary evidence at the bench trial
establishes that stock certificate no. 8 was issued in Argos's name. By virtue of the bench
trial and interlocutory judgment, the chain of title was established in the partnership. 

 Procedurally unusual in terms of chronology, the summary judgment in this case
followed the 1991 bench trial by some seven years. Based on various agreements and
court orders, Ranzau's motion for summary judgment sought to establish the subsequent
ownership of the stock in himself alone. Agreements, court orders, and documents
evidence the following conveyances after the initial 1988 conveyance by Ballis: Argos, Brosseau, 80451 FDIC June 1990 

 FDIC Receiver in state court -- July 25, 1990

 Brosseau bankruptcy filing U.S. bankruptcy estate -- October 8, 1991

 U.S. Bankruptcy Trustee Ranzau February 1, 1994 

 Receiver in state court Ranzau April 16, 1994 

The chain of ownership evidenced in the various agreements, court orders, and
conveyances establishes as a matter of law that Ranzau is the owner of the stock.

 As controverting argument and evidence on his "chain of title" issue, Brosseau also
submits that the Mexican judgment at the very least raises a fact issue on the existence of
other shareholders, since it recites that the Brosseau Trust and DTA are the only
shareholders in 80451. However, for the same reasons set out herein, the Mexican
judgment is not binding and does not raise a fact issue. Neither does the divorce judgment
out of Dallas County serve to raise a fact issue regarding ownership of the stock; such
treatment would give the divorce judgment collateral estoppel effect, which we have held
is not possible here. We find that the summary judgment evidence in conjunction with the
trial evidence establishes the chain of title into Ranzau. 

Evidentiary Objections


 Brosseau contends the affidavit and exhibits attached to Ranzau's motion for
summary judgment are not competent evidence, and, without supporting evidence,
Ranzau's motion should have been denied and his granted. 

 The basic thrust of Brosseau's argument is that Ranzau's affidavit is merely a
verification of allegations set forth in Ranzau's motion. Brosseau correctly points out that
a verification of a motion for summary judgment does not constitute summary judgment
evidence. See Quanaim v. Frasco Restaurant & Catering, Inc., 17 S.W.3d 30, 42 (Tex.
App.--Houston [14th Dist.] 2000, pet. denied). To constitute competent evidence to
support his motion, Ranzau's affidavit must be made on personal knowledge, separately
set forth facts as would be admissible in evidence and show affirmatively that the affiant
is competent to testify to matters stated therein. See Tex. R. Civ. P. 166a(f). The portion
of Ranzau's affidavit that is a mere verification of his summary judgment motion is
insufficient. 

 However, the affidavit contains more than the verification. Under rule 166a(c), the
movant may support a motion for summary judgment with depositions, interrogatories, and
pleadings, as well as affidavits. See Tex. R. Civ. P. 166a(c). Here, Ranzau supported his
motion with copies of certified pleadings on file with the courts and various other
documents along with his affidavit authenticating the documents. 

 In addition to his complaints about Ranzau's affidavit, Brosseau also lodges
authentication and hearsay objections to the twenty-five exhibits attached to the summary
judgment motion. As detailed herein, the objections have no merit. Under Tex. R. Evid.
901(a), the requirement of authentication or identification "is satisfied by evidence
sufficient to support a finding that the matter in question is what its proponent claims." 
Mindful of the rule's language, we find that Ranzau's affidavit does adequately
authenticate the exhibits attached to his motion. By sworn statement, he swears the
documents are either true and correct copies of the originals in his possession or are true
and correct copies of certified copies on file with the court. Although Brosseau complains
that Ranzau does not distinguish between the documents Ranzau claims are business
records and those he claims are copies of certified originals, we find the distinction to be
self-evident in the record. Exhibits 1-6, 8-15, 21, and 24-25 are copies of pleadings (and,
in certain cases, attachments thereto) on file with the 253rd District Court in Liberty
County, Texas, the United States District Court for the Eastern District of Texas --
Beaumont Division, or the United States Bankruptcy Court for the Eastern District of
Texas. Exhibits 16- 20, 22, and 23 are documents by which the property at issue (the
stock or Casa T) was conveyed to Ranzau. Being conveyances to him, we consider them
adequately authenticated by his affidavit. Exhibit 7 is a document by which the FDIC
assigned the stock and quitclaimed Casa T to the receiver herein. It is beyond dispute that
the FDIC judicially foreclosed on whatever interest, if any, Brosseau/Argos Properties had
in certificate no. 8, as well as all rights evidenced by that certificate, and beyond dispute
that the FDIC conveyed the property to the receiver. 

 Brosseau faults Ranzau's affidavit, which generally tracks the business records
exception to the hearsay rule (Tex. R. Evid. 8.03(6)), because Ranzau does not expressly
state he is the custodian of those records. We find it sufficient that, in addition to tracking
the business records rule, Ranzau expressly states that the originals of the documents are
in his possession; by that declaration he, in effect, states he is the custodian or "other
qualified witness." See Tex. R. Evid. 803(6). We find Ranzau's affidavit sufficiently
authenticated the records. 

 Brosseau also objected at the trial court level to exhibits 1 through 25 on hearsay
grounds. He offers no explanation as to how all the exhibits, including the pleadings and
attachments thereto from the various courts, constitute hearsay. We find that this objection
to twenty-five exhibits, styled only as a broad hearsay objection to the exhibits as a whole,
lacks sufficient specificity to apprise the court of the precise nature of his complaint. See
Tex. R. App. P. 33.1(a)(1)(A). 

 We find no merit to Brosseau's complaints concerning Ranzau's summary judgment
evidence. 

 Necessary Parties and Conflict of Laws 

 In issues two, three, and four, Brosseau submits additional reasons why the trial
court should have granted his motion for summary judgment: 80451 and DTA were
necessary parties to the lawsuit, but were not joined; this court has no jurisdiction over
Mexican real estate; and this court has no jurisdiction over a foreign corporation. We have
already addressed the Mexican real estate issue. In reference to the other two issues, we
hold DTA is not a necessary party here as it has no claim or interest in 80451 other than
that conferred by the 1996 Mexican judgment, which we have held does not control the
issues here. As to 80451, the evidence at the bench trial demonstrated that ownership of
the corporation consisted of a single share of stock -- certificate no. 8. We find that
joinder of the corporation is not necessary. We have jurisdiction over the parties, Ranzau
and Brosseau, who by virtue of the record in the bench trial and by the finding of the
interlocutory judgment, were partners in the ownership of the sole, outstanding share of
stock. 

 We reiterate that Texas courts have both subject matter and personal jurisdiction
over Ranzau, Brosseau, and their claims. Issues one, two, three, and four are overruled. 

A Question of Law


 Arguing that the granting of summary judgment in favor of Ranzau was in error
because of the existence of a fact issue on the question of collateral estoppel, appellant asks
in issue five that we reverse the trial court's summary judgment that Ranzau owns 80451
and remand the case to the trial court. The issue of the estoppel effect to be given a
judgment is a question of law for the court, not a question of fact for a jury. See McRae
Exploration and Prod., Inc. v. Reserve Petroleum Co., 962 S.W.2d 676, 680 (Tex. App.--Waco 1998, pet. denied). We have already reviewed that question of law de novo and
resolved it by declining to give preclusive effect to the Mexican judgment. Issue five is
overruled. 

 Breach of Contract

 In issue six, Brosseau asserts that Ranzau presented no evidence of breach of
contract in the 1991 bench trial. The interlocutory judgment declared that a partnership
existed between Ranzau and Brosseau/Argos and then couched liability in terms of the
latter's breach of fiduciary duty, not in terms of breach of contract. Since the judgment
is not grounded in breach of contract, issue six has no merit and we overrule it. 

Breach of Fiduciary Duty


 In issue seven, Brosseau contends that there is no evidence to support the trial
court's finding that he breached a fiduciary duty to Ranzau. Under both the Texas
Uniform Partnership Act and the common law, partners have a duty to one another to
make full disclosure of all matters affecting the partnership and to account for all
partnership profits and property. Bohatch v. Butler & Binion, 905 S.W.2d 597, 602 (Tex.
App.--Houston [14th Dist.] 1995, aff'd, 977 S.W.2d 543 (Tex. 1998); Tex. Rev. Civ.
Stat. Ann. art. 6132b § 20 (Vernon 1970). Partners owe one another a fiduciary duty,
including a strict duty of good faith and candor. Hawthorne v. Guenther, 917 S.W.2d
924, 934 (Tex. App.--Beaumont 1996, writ denied). Ranzau agreed that Brosseau, either
individually or through Argos Properties, would take paper title to 80451 and relied on
Brosseau's promise that a half interest would be transferred to Ranzau later. In addition,
Ranzau allowed Brosseau to manage the maintenance and rental of Casa T. This evidence
supports the conclusion that Brosseau was the managing partner. A managing partner
owes his partners the highest fiduciary duty recognized in the law. Huffington v.
Upchurch, 532 S.W.2d 576, 579 (Tex. 1976). Ranzau offered uncontroverted testimony
that, in spite of their agreement to divide both expenses and income equally, Brosseau did
not forward rental income to Ranzau. This evidence is sufficient to support the breach of
fiduciary duty finding in the judgment. Issue seven is overruled.

Fraud

 In issue eight, Brosseau contends the money judgment from the bench trial should
be reversed because there was no evidence to support a finding of fraud. However, neither
the 1991 interlocutory judgment nor the final judgment find that Brosseau engaged in
fraudulent conduct. The judgment is based on breach of fiduciary duty -- a finding
supported by the evidence. Appellant's request in issue eight that the money judgment be
reversed is overruled.

Actual Damages


 In issue nine, Brosseau contends there is no evidence, or insufficient evidence, to
support the trial court's award of actual damages. The trial court found liability on a
breach of fiduciary duty theory and awarded actual damages in the amount of $107,196.75. 
Brosseau claims Ranzau failed to prove Brosseau's "unfair gain" from the alleged breach
of fiduciary duty. Pointing to Ranzau's attorney's comments during closing argument,
Brosseau asserts that the actual damages awarded by the trial court consisted of the total
amount of money Ranzau claimed he put into the deal, plus ten thousand dollars. 
However, the judgment does not reflect the method by which the trial court calculated
actual damages, other than a finding of liability for breach of fiduciary duty. The record
reveals evidence of damages or injury, apart from Ranzau's initial investment, including
the following: Ranzau's payment to Brosseau on the monthly note and Brosseau's failure
to then pay that amount to the bank; Brosseau's failure to account for any profits from the
lease of Casa T and his letting a friend have "total run of the house" over Ranzau's
objection; Ranzau's wife being locked out of and denied access to the house and having
to make other accommodation arrangements for herself and her guests; Ranzau's loss of
use and enjoyment of Casa T; and Ranzau's payment of expenses at Brosseau's insistence
without being given an adequate accounting of those expenses. 

 Brosseau offers additional arguments asserting the lack of evidence on actual
damages. He points out that Ranzau did not present sufficient evidence to justify mental
anguish damages. The judgment does not state the trial court awarded any mental anguish
damages. Brosseau also claims the admission of Exhibit 26, Ranzau's check for
$12,434.86 to Argos Properties, was erroneous. Even if that were the case, no harm
resulted. Evidence of Ranzau's payment of that amount came in elsewhere without
objection. See Cash America Int'l, Inc. v. Hampton Place, Inc., 955 S.W.2d 459, 463
(Tex. App.--Fort worth 1997, pet. denied). Brosseau also maintains that Ranzau was
required to elect his remedy as between fraud and breach of contract. However, the
interlocutory judgment, which is incorporated in the final judgment, awards damages for
breach of fiduciary duty, not for fraud or breach of contract. Issue nine is overruled. 

Exemplary Damages


 In issue ten, Brosseau argues that the punitive damage award should be reversed
because there is no evidence of malice or actual damages. However, we have held that
Ranzau presented sufficient evidence to substantiate both actual damages and breach of
fiduciary duty. A defendant's intentional breach of fiduciary duty is a tort for which a
plaintiff may recover punitive damages. Hawthorne, 917 S.W.2d at 936; see also Lesikar
v. Rappeport, 33 S.W.3d 282, 310 (Tex. App.--Texarkana 2000, pet. denied). The
"intent" issue concerning exemplary damages for breach of fiduciary duty is whether the
one with a fiduciary duty intended to gain an additional unwarranted benefit. See Cheek
v. Humphreys, 800 S.W.2d 596, 599 (Tex. App.--Houston [14th Dist.] 1990, writ denied).

 As noted herein, the record contains legally and factually sufficient evidence that
Brosseau breached his fiduciary duty to Ranzau. The primary violations were his failure
to document the transfer of a half interest in 80451 from Argos into the partnership as
promised, his refusal to account to Ranzau for the uses made of rental income, and his
failure to apply payments from Ranzau toward the promissory note which initially financed
the house. Brosseau attempted to maintain all ownership of 80451 while demanding that
Ranzau pay half of the maintenance costs and note payments. By virtue of the finding in
the interlocutory judgment and the summary judgment evidence, the only parties with an
ownership interest in 80451 were Ranzau and Brosseau/Argos; the court as finder of fact
could reasonably draw the inference that the income withheld from Ranzau benefitted
Brosseau. Brosseau offered no evidence controverting Ranzau's proof. 

 We address the punitive damage evidence in light of the factors set forth in Alamo
Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981).

 (1) The nature of the wrong: The wrong was an intentional violation of the
fiduciary duty owed by a managing partner to a partner -- the "highest fiduciary duty
recognized by law." See Hawthorne, 917 S.W.2d at 934.

 (2) The character of the conduct involved: The trial court heard evidence that
Brosseau's behavior toward Ranzau was duplicitous. For example, when Ranzau and
Brosseau were negotiating the purchase of 80451 in September 1988, Brosseau suggested
that, to expedite the deal, ownership initially be transferred to Argos Properties, which he
wholly owned. He promised Ranzau that the legal paperwork recognizing Ranzau's half-ownership would be drawn up "later." This promised event still had not taken place at the
time of the bench trial almost three years later. 

 (3) The degree of the culpability of the wrongdoer: The court heard testimony about
conduct on Brosseau's part which went beyond self-dealing. For example, in March 1989
the house was not rented to paying guests at the time; the only occupant was Javier Klaus,
a friend of Brosseau, who acted as Brosseau's agent in refusing Ranzau's wife admittance. 
Ranzau testified there was no evidence that Klaus was ever charged rent for the use of the
house. Ranzau's wife found herself locked out of their own largely unoccupied house, on
the orders of Brosseau, with her exclusion being carried out by a tenant whom Brosseau
exempted from rent. 

 (4) The situation and sensibilities of the parties concerned: Remorse is a factor to
be considered in assessing the situation and sensibilities of the parties. See Mobil Oil
Corp. v. Ellender, 934 S.W.2d 439, 460 (Tex. App.--Beaumont 1996), rev'd in part on
other grounds, 968 S.W.2d 917 (Tex. 1998). The record is silent as to any remorse on 
Brosseau's part, or as to any mitigating explanation for his behavior. Moreover,
Brosseau's wrongful conduct did not end when 80451 was put into receivership. In August
1992, the trial court found that Brosseau had diverted rental income from Casa T and
engaged in "admitted intentional violations of the prior Orders of this Court." 

 Regarding the "situation and sensibilities" of Ranzau, we do note that Ranzau is a
professional real estate investor. 

 (5) The extent to which Brosseau's conduct offends a public sense of justice and
propriety: The evidence is sufficient to support a finding of an injustice. Much of
Brosseau's behavior subsequent to the purchase of 80451 reasonably could be viewed as
evidence of outright intentional harm to Ranzau. 

 We hold that there is legally and factually sufficient evidence to justify the award
of punitive damages under the Kraus factors. The amount awarded ($200,000) is within
the statutory limits. See Tex. Civ. Prac. & Rem. Code Ann. § 41.008 (Vernon 1997). 
We affirm the award of punitive damages. Issue ten is overruled.

Attorney's Fees


 In issues eleven and twelve Brosseau challenges the award of attorney's fees to
Ranzau. In Texas, attorney's fees are not recoverable unless authorized by statute or
provided for by contract. See Travelers Indem. Co. of Connecticut v. Mayfield, 923
S.W.2d 590, 593 (Tex. 1996). Brosseau contends that the attorney's fees awarded are not
recoverable under either one. 

 Ranzau maintains he is entitled to recover attorney's fees under a statutory
provision, Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 1997), which allows
attorney's fees pursuant to a written or oral contract. Ranzau's argument would have merit
if he had recovered for breach of contract. He did not. The 1991 interlocutory judgment
expressly finds liability only under the breach of fiduciary duty and declaratory judgment
causes of action. There being no recovery for a breach of contract cause of action, 
Ranzau cannot recover attorney's fees under that theory. See Green Int'l, Inc. v. Solis,
951 S.W.2d 384, 390 (Tex. 1997). 

 In issue eleven, Brosseau contends attorney's fees are not recoverable under the
Declaratory Judgment Act ("DJA"), at least in this case. See Tex. Civ. Prac. & Rem.
Code Ann. § 37.009 (Vernon 1997). Ranzau pleaded a cause of action, among others, 
for a declaratory judgment and also requested attorney's fees. Attorney's fees "as are
equitable and just" may be recovered under section 37.009. See Bocquet v. Herring, 972
S.W.2d 19, 21 (Tex. 1998). The standard for awarding attorney's fees under the DJA is
largely within the trial court's discretion, and its decision will not be reversed absent an
abuse of that discretion. Id. However, as Brosseau argues, attorney's fees cannot be
awarded if the declaratory judgment cause of action is simply coupled with a damage
action (i.e., breach of fiduciary duty) in order to pave the way to recover attorney's fees. 
See Leventhal & Co. v. Reeves, 978 S.W.2d 253, 258 (Tex. App.--Houston [14th dist.]
1998, no pet.). 

 We conclude Ranzau cannot recover attorney's fees pursuant to the DJA, because
the relief he obtained under the DJA is subsumed within the relief he also sought through
his breach of fiduciary duty claim. See Leventhal, 978 S.W.2d at 258. Here Ranzau
asked the trial court for a declaratory judgment (1) that a partnership existed between
Brosseau and himself and (2) that the partnership's assets are the stock of 80451 and Casa
T. Ranzau also claimed a breach of fiduciary duty arising out of the partnership. To
establish the breach of fiduciary duty under the pleadings in this case, Ranzau had to prove
the existence of the partnership agreement as a prerequisite to establishing the breach of
fiduciary duty owed to a partner. Under such a circumstance, we find the award of
attorney fees cannot be sustained. 

 As a further argument, Ranzau attempts to distinguish between the 1991 declaratory
judgment and the 1998 declaratory judgment. He seems to say that even if this court finds
no attorney's fees are recoverable under the interlocutory judgment, the fees may
nonetheless be recoverable under the 1998 final judgment. However, the attorney's fees
in this case were awarded in the 1991 interlocutory judgment. There were no additional
attorney's fees pleaded for in Ranzau's motion for summary judgment and no attorney's
fees awarded in the 1998 final judgment other than those already set out in the incorporated
1991 interlocutory judgment. Issue number eleven is sustained.

 In issue twelve, Brosseau points out that attorney's fees are not recoverable for
breach of fiduciary duty. He is correct. Generally, attorney's fees are not recoverable in
tort actions unless provided by statute. Huddleston v. Pace, 790 S.W.2d 47, 49
(Tex.App.--San Antonio 1990, writ denied). Breach of fiduciary duty is a tort. See
Hawthorne v. Guenther, 917 S.W.2d 924, 936 (Tex. App.--Beaumont 1996, writ denied). 
We hold the trial court erred in awarding attorney fees to Ranzau. Issue twelve is
sustained.

The Jury Trial Request



 In issue thirteen, appellant complains of being denied a jury in the 1991 trial. 
During the pretrial hearing that preceded the 1991 bench trial, Brosseau preserved error
by pointing out that he had filed a jury request and that he objected to the setting of the
case on the non-jury docket. While opposing Brosseau's continuance motion and jury
request, Ranzau asked the court to take judicial notice of a docket entry stating that
Brosseau paid the required jury fee on March 8, 1991, sixty days before the date set for
trial. The court took such notice, then denied Brosseau a jury trial, and ordered the parties
to return for a bench trial that afternoon. 

 The right to a jury trial is guaranteed by the Texas Constitution and is one of our
fundamental rights. See Tex. Const. art. I, § 15; Tex. Const. art. V, § 10. In order to
secure the right to a jury trial, the Texas Rules of Civil Procedure specify that a litigant
must submit a written request for a jury and pay a $10 jury fee "not less than thirty days
in advance" of the trial date. Tex. R. Civ. P. 216. A request in advance of the thirty day
deadline is presumed to have been made a reasonable time before trial. Wittie v. Skees,
786 S.W.2d 464, 465 (Tex. App.--Houston [14th Dist.] 1990, writ denied). 

 We do not take lightly the denial of a jury request; restrictions on the right to a jury
trial are subjected to the utmost scrutiny. See Granger v. Folk, 931 S.W.2d 390, 393
(Tex. App.--Beaumont 1996, orig. proceeding). Brosseau's jury request was timely on its
face, although possibly not timely in the context of the peculiar circumstances confronting
this trial court. The record shows there had been two agreed trial settings on a non-jury
basis -- one for August 20, 1990, and one for October 5, 1990. After the case was not
reached on the October 5, 1990, setting, Ranzau asked for another setting. Following this
request, Brosseau made his jury demand. On May 8, 1991, a hearing was held on
Brosseau's motion for continuance -- based in part on his desire to take certain depositions
and in part on his jury demand. The trial court denied his motion and immediately
proceeded to trial. The record indicates that a jury trial would have seriously impeded the
court's operations, including the pressing requirement to dispose promptly of its criminal
docket. Nevertheless, even under the exceptional circumstances in this case, some of
which we have described, we hold that the trial court did err in refusing Brosseau a jury
trial. 

 Having held that the trial court erred in refusing a jury trial, we must perform a
harm analysis. We note the Texas Supreme Court has held that even an erroneous refusal
to grant a jury trial may be harmless "if the record shows that no material issues of fact
exist and an instructed verdict would have been justified." Halsell v. Dehoyos, 810
S.W.2d 371, 372 (Tex. 1991). Brosseau's answer, which included a denial of the
existence of the partnership, was not filed until the last day of trial; the trial court struck
his answer as being untimely filed. After Ranzau rested his case, Brosseau offered no
evidence. A judgment would have been justified as a matter of law or by default. Under
these unique circumstances, we hold that the trial court's error in denying the jury request
was harmless. Issue thirteen is overruled.

Recusal Hearing Notice


 In issue fourteen, Brosseau contends the final summary judgment and the money
judgment should be reversed because he was denied notice of the first recusal hearing held
on December 5, 1997. Brosseau's initial brief was filed in 1999 -- before this court's
opinion of October 18, 2000, in Brosseau v. Ranzau, 28 S.W.3d at 235. Brosseau raised
the issue in the appeal in 2000 to this court; this court resolved it in his favor and ordered
a second recusal hearing. See id. at 240. On February 2, 2001, the second hearing was
held as ordered. The judge in the second recusal hearing denied the motion to recuse. 

 In his motion for rehearing, Brosseau points out that the merits of the denial of the
second recusal hearing in 2001 were not before us at the time his 1999 brief was filed. He
is correct. On rehearing, he addresses the merits by pointing to evidence from the second
hearing that he claims provides a sound basis for recusal. Specifically, he questions the
impartiality of the trial judge on the grounds that Ranzau's counsel looked over oil and gas
papers for the trial judge, periodically accompanied the trial judge on hunting trips, had
a personal friendship with him, and handled the trial judge's divorce in 1986. 

 Under Tex. R. Civ. P. 18b(2)(a), a judge shall recuse himself in any proceeding in
which "his impartiality might reasonably be questioned[.]" We review the denial of a
motion to recuse under an abuse of discretion of standard. Woodruff v. Wright, 51 S.W.3d
727, 736 (Tex. App.--Texarkana 2001, pet. denied). Ranzau's attorney testified he
represented the trial judge in the judge's divorce in 1986; there was no evidence he was
representing the judge on any matter relating to the 1986 divorce during the pendency of
the instant case. Ranzau's attorney testified he looked over an oil and gas lease some two
or three years after the 1986 divorce. The judge hearing the recusal motion weighed the
evidence and was free to conclude the representation did not occur during the pendency
of this case. Abuse of discretion does not exist so long as there is some evidence of a
substantive and probative character to support the decision. Holley v. Holley, 864 S.W.2d
703, 706 (Tex. App.--Houston [1st Dist.] 1993, writ denied); see also Lueg v. Lueg, 976
S.W.2d 308, 310-11 (Tex. App.-- Corpus Christi 1998, pet. denied) (The record before
the judge at the recusal hearing provided no insight into the nature of opposing counsel's
on-going representation of the trial judge and thus, under an abuse of discretion standard,
provided an insufficient basis for finding recusal was mandated.). Unlike Lueg, the record
here does not establish on-going representation of the trial judge by Ranzau's attorney, and
the recusal judge was free, based on the record, to believe there was none. We further
note that the existence of a friendship between a judge and an attorney appearing before
him is not sufficient, without more, to demonstrate partiality. See Woodruff, 51 S.W.3d
at 736-37 (There was no error in denying recusal motion even though the trial judge knew
the defendant and defendant had operated on the judge's family member.). Based on the
evidence presented at the hearing, we find there was no abuse of discretion in denying the
motion. 

 Having abated this appeal to permit a hearing on the motion to recuse, we now have
reconsidered issue fourteen in light of the record of the second recusal hearing presented
to this court. The Texas Supreme Court has made clear that even "the erroneous denial
of a recusal motion does not void or nullify the presiding judge's subsequent acts"; the
judgment may be reversed on appeal if erroneous. See In re Union Pacific Resources Co.,
969 S.W.2d 427, 428 (Tex. 1998). Here, the recusal motion was properly denied on the
merits and we affirm that denial; none of the presiding judge's acts are void. (3) The trial
court reinstated the 1991 interlocutory monetary judgment in its final judgment; that
judgment is not void and is affirmed here. Issue fourteen is overruled.

Disqualification of the Judge


 In issue fifteen, Brosseau contends that the trial judge was disqualified. We
addressed and overruled this argument in an earlier opinion. See Brosseau, 28 S.W.3d at
237. Issue fifteen is overruled.

The Late-Filed Answer


 In issue sixteen, appellant complains about the trial court's refusal to let him file his
answer at the end of Ranzau's case; Brosseau claims his defenses were tried by consent. 
We disagree. The lawsuit was on file for two years without an answer to Ranzau's petition
being filed. Pleadings must be amended seven days before trial unless the trial court
grants permission to amend. Tex. R. Civ. P. 63. This permits all parties to know what
issues have been joined and will be tried before trial begins.

 Brosseau apparently relies on the last sentence in Rule 63, which states that "leave
[by the court to file late pleadings] shall be granted by the judge unless there is a showing
that such filing will operate as a surprise to the opposite party." Brosseau's untimely
answer included affirmative defenses. See State Bar of Texas v. Kilpatrick, 874 S.W.2d
656, 658 (Tex. 1994); see also Chapin & Chapin, Inc. v. Texas Sand and Gravel Co.,
Inc., 844 S.W.2d 664, 665 (Tex. 1992). An answer raising affirmative defenses filed after
the plaintiff has rested his case is likely to result in surprise and prejudice to the plaintiff;
Ranzau would have found it rather difficult to address any new issues raised after he had
rested his case. The trial court did not err in striking Brosseau's untimely answer. Issue
sixteen is overruled.

Trial by Consent, Affirmative Defenses 


 Finally, Brosseau argues that Ranzau's invitation at trial for him to present evidence
establishes consent to a trial of his defenses. However, Brosseau put on no evidence when
Ranzau rested. His cross-examination of Ranzau's witnesses served to elicit testimony
relevant to Ranzau's claims. Issues seventeen and eighteen are overruled. 

 All of Brosseau's issues, with the exception of eleven and twelve, are overruled. 
Issues eleven and twelve concerning attorneys fees are sustained. Ranzau is not entitled
to attorney's fees. We affirm the trial court's judgment in all other respects. 

 AFFIRMED AS MODIFIED. 

 _________________________________

 DAVID B. GAULTNEY Justice

Submitted on December 28, 2001

Opinion Delivered June 6, 2002

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.
1. We note that Brosseau was not a party to the Mexican litigation (at least he does
not claim he was), and the judgment does not vest any ownership interest in him. Any
interest Brosseau had in the property became the property of the bankruptcy estate when
he filed for bankruptcy in 1991, and the bankruptcy trustee transferred whatever interest,
if any, Brosseau had to Ranzau in 1994. 
2. The trail of agreements, agreed orders, and the agreed judgment detailed in this
opinion are in conflict with Brosseau's assertion that he never claimed an interest in the
property. In addition, Brosseau signed off individually and as president of Argos
Property, Inc. in the stipulation and compromise agreement whereby he agreed, along with
Argos and 80451, to convey stock certificate no. 8 and Casa T to the FDIC. Brosseau
contends that he defended against Ranzau's ownership claim of stock certificate no. 8,
because the claim was untrue and because, being the defendant, he had no choice but to
defend the case. 
3. This court's opinion in Brosseau, 28 S.W.3d at 236, cited In re Union Pacific
Resources Co.; any holding inconsistent with the Texas Supreme Court's decision was
unintended and, to the extent necessary, is overruled by this opinion.