NUMBER 13-05-589-CV


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG


 

FRANK J. MIGL, Et Al., Appellants,

v.
 

DOMINION OKLAHOMA TEXAS 

EXPLORATION & PRODUCTION, INC., Appellee.

 

On appeal from the 25th District Court of Lavaca County, Texas.


 

MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza 


Memorandum Opinion by Chief Justice Valdez



 Frank J. Migl, Elrose Migl, Brenda Kay Stephens, Martha Mendoza, Louise Haines,
Betty Haines Ferguson, Laura Rowlett, and Shirley J. Moor, individually and as
independent executor of the estate of Clifford Ray Thomas, Jr., (collectively referred to as
"the Migls"), are the lessors of an oil and gas lease located in Lavaca County. The Migls
sued Dominion Oklahoma Texas Exploration & Production, Inc., ("Dominion"), the current
lessee, for damages stemming from the alleged under payment of royalties. The trial court
granted summary judgment in Dominion's favor. The Migls appeal from the summary
judgment. We affirm the trial court's judgment.

I. ISSUES

 The Migls raise six issues on appeal, which may be properly addressed in three. 
The Migls ask us to determine whether the trial court erred in granting summary judgment
because there were disputed fact issues about (1) whether Dominion failed to obtain the
highest price reasonably possible, (2) whether Dominion defrauded the Migls by
representing to them that the royalty distributions were the highest price reasonably
possible, and (3) whether the trial court erred in granting a final judgment based upon a
summary judgment motion that did not seek judgment on all claims before the trial court. 

II. BACKGROUND

A. Factual Background

 The underlying dispute stems from gas sales made according to a gas purchase
agreement dated March 1, 1998, between Costilla Energy, the predecessor-in-interest to
Dominion and seller of natural gas, and Houston Pipeline Company ("HPL"), the buyer. 
The original agreement committed all of the leasehold's gas to HPL and was effective
through February 2002. The agreement set a contract price at two-percent below the
Houston Ship Channel/Beaumont, Texas Index. It also allowed the parties to mutually
agree on a basket price as an alternative to the contract price. The basket price was a
differential average of four price indices.

 The original agreement's duration and price calculations were amended four times
between 1998 and March 2001. Some of the amendments changed the contract price
based on delivery points, MMBtu standards, and carbon dioxide modifications. Costilla
executed the first two amendments. The second amendment extended the original
agreement's term through February 2005. On June 14, 2000, pursuant to a bankruptcy
court order, Costilla assigned its interest in the lease in question to Louis Dreyfus, who
executed two more amendments to the agreement before the lease was acquired by
Dominion in November 2001. Approximately three years later, in December 2004,
Dominion asked HPL for the basket price. HPL promptly refused the request.

B. Procedural Background

 In their live petition, the Migls raised six causes of action based upon Dominion's
sale of gas at allegedly below market prices. The causes of action are: (1) breach of
implied covenants of the lease, (2) breach of express covenants of the lease, (3) common
law duty to account for all transactions, (4) common law fraud, (5) statutory fraud based
upon a violation of 27.01 of the Texas Business Commerce Code, and (6) a request for
attorney's fees. (1) 

 The Migls alleged that Dominion sold gas below market value and that such below
market sales violated the express and implied covenants of the lease. The relevant royalty
provision contains a bifurcated clause, which reads:

 On gas, including casinghead gas or other gaseous substance, produced
from said land and sold or used off the premises or for the extraction of
gasoline or other product therefrom, the market value at the well or one-eighth of the gas so sold or used, provided that the gas sold at the wells the
royalty shall be one-eighth of the amount realized from such sale. (emphasis
added)


In essence, the Migls alleged that the lease expressly obligates the lessee to sell natural
gas for market value and that the implied covenant to reasonably market the lease's
natural gas requires the lessee to obtain the best reasonably price. To support the position
that Dominion fell short on its obligations, the Migls marshaled as evidence several of
Dominion's invoices, invoices for wells proximately located to the wells administered by
Dominion but administered by different producers, and an expert report by Charles Guffrey,
Ph.D. The report uses the Houston Ship Channel gas price index to support the
proposition that Dominion sold gas below market value.

 Dominion generally denied the Migls' allegations, asserted several affirmative
defenses, and filed special exceptions to all of the Migls' causes of action. On November
21, 2004, Dominion filed a traditional and no evidence motion for summary judgment. The
trial court postponed consideration of the summary judgment motion for several months
to allow further discovery. On June 16, 2005, the trial court considered a renewed motion
for summary judgment. (2) Dominion's first traditional summary judgment argument was that
it did not need to prove that the lease's natural gas was sold at "market value" because that
is the lease's standard for gas sold off of the lease premises, and all of the gas was sold
at the well. Secondly, Dominion argued that it had no control over the price at which the
gas was sold because of a pre-existing contract negotiated by Costilla, Dominion's
predecessor. Dominion's no-evidence summary judgment argument was that evidence of
self-dealing or negligence is required to sustain an action for breach of the implied
covenant to market oil or gas and the Migls offered no evidence of either negligence or
self-dealing. See Yzaguirre v. KCS Resources, Inc., 53 S.W.3d 368, 374 (Tex. 2001).

 The Migls responded to Dominion's summary judgment motion. They objected to
three affidavits attached to Dominion's summary judgment motion and to the form of
Dominion's hybrid summary judgment motion. (3) The Migls insisted that the hybrid motion
was conclusory and that the trial court should therefore treat it as a traditional motion for
summary judgment. See Michael v. Dyke, 41 S.W.3d 746, 751-52 (Tex. App.-Corpus
Christi 2001, no pet.) (holding that when it is not readily apparent to the trial court that
summary judgment is sought under rule 166a(i), the court should presume that it is filed
under the traditional summary judgment rule and analyze it according to those
well-recognized standards). 

 In response to Dominon's first two summary judgment arguments, the Migls
contended that Dominon had a duty to reasonably market the gas and obtain the best
possible price regardless of the point-of-sale or pre-existing contracts. The Migls further
argued that determining the best reasonable price was a fact question, which precluded
summary judgment. Regarding Dominon's no-evidence summary judgment argument, the
Migls argued that Dominon's tardy request for a better price was some evidence of
negligence.

 The trial court signed an order granting Dominion's renewed motion for summary
judgment and entered a take nothing judgment against the Migls. The Migls filed a motion
for new trial, which was overruled by operation of law. This appeal ensued.

III. DISCUSSION

A. Issue 3: Finality of the Judgment

 The renewed summary judgment motion prayed for a judgment that the plaintiffs take
nothing and that Dominion have its costs of court. The final judgment granted Dominion's
prayer and included a Mother Hubbard clause, which stated that "[a]ll relief not expressly
granted in this judgment is denied." The Migls challenge the finality of the judgment in their
third issue. They claim that the summary judgment motion did not address their claims for
(1) breach of lease, (2) accounting, and (3) attorney's fees. As discussed below, we find
that the trial court sufficiently dealt with the Migls' express and implied covenant claims. 

 With regard to the accounting and attorney's fees claims, we turn our attention to the
intent of the trial court and the behavior of the parties because finality of a judgment "must
be resolved by a determination of the intention of the court as gathered from the language
of the decree and the record as a whole, aided on occasion by the conduct of the parties."
Lehmann v. Har-Con Corp., 39 S.W.3d 191, 203 (Tex. 2001) (quoting 5 Ray W. McDonald,
Texas Civil Practice 27:4, at 4 (John S. Covell, ed., 1992 ed.)). 

 Assuming a suit for an accounting is an independent cause of action, the record
establishes that the trial court intended to deny the Migls request for an accounting. See
T.F.W. Mgmt. v. Westwood Shores Prop. Owners Ass'n, 79 S.W.3d 712, 717(Tex.
App.-Houston [14th Dist.] 2002, pet. denied) (treating an accounting as a cause of action
based on alleged contractual obligations and principles of equity); compare Michael, 41
S.W.3d at 754. (holding that an action for accounting may be a suit in equity, or it may be
a particular remedy sought in conjunction with another cause of action.). The record is
replete with invoices and accounting records provided by Dominion to the Migls. Indeed,
the Migls used the accounting records provided by Dominion to fashion an expert report.
The final judgment's Mother Hubbard clause joined with the invoices in the record and the
absence of any evidence showing Dominion's attempt to conceal accounting records
demonstrates an intention by the trial court and the parties to finally dispose of the
accounting claim, if there was one.

 The Migls' request for attorney's fees was denied in the final judgment as well. As
a general rule, attorney's fees are not recoverable unless allowed by statute or by contract.
See Dallas Cent. Appraisal Dist. v. Seven Inv. Co., 835 S.W.2d 75, 77 (Tex. 1992). Section
38.001 of the civil practice and remedies code allows a party to recover such fees if the
party prevails on a cause of action for which attorney's fees are recoverable and recovers
damages. Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997). Attorney's fees are
recoverable in a suit on a contract pursuant to subsection 38.001(8). Tex. Civ. Prac. &
Rem. Code Ann. § 38.001(8) (Vernon 1997). A party who does not recover for breach of
contract, however, cannot recover attorney's fees under that theory. Brosseau v. Ranzau,
81 S.W. 3d 381, 397 (Tex. App.-Beaumont 2002, pet. denied). Section 91.406 of the
natural resources code provides for attorney's fees in certain oil and gas disputes if there
is a judgment "in favor of the plaintiff." Tex. Nat. Res. Code Ann. § 91.406 (Vernon 2001).
In the case at hand, the Migls did not prevail on a breach of contract claim or an oil and gas
dispute as defined by the natural resources code. Consequently, the record evidences an
intention that the trial court's denial of attorney's fees to the Migls be final. 

 Therefore, we construe the judgment in the instant to be final and appealable
because it unequivocally expresses an intent to dispose of the case. See Lehmann, 39
S.W.3d at 206. The Migls' third issue is overruled. 

B. Standard of Review 

 We review the district court's grant of summary judgment de novo. Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 156 (Tex. 2004). When a movant presents both
traditional and no-evidence grounds for summary judgment, and the district court does not
specify the ground upon which the motion is granted, as here, we must affirm the summary
judgment if any of the theories presented to the trial court and preserved for appellate
review are meritorious. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 217
(Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable
to the nonmovant, and we indulge every reasonable inference and resolve any doubts in
the nonmovant's favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 549 (Tex. 1985).

 A defendant who moves for summary judgment under rule 166a(c) is entitled to have
its motion granted if it conclusively negates at least one of the essential elements of the
plaintiff's cause of action or if it conclusively proves each element of its affirmative defense,
thereby showing that it, as the movant, is entitled to judgment as a matter of law because
no genuine issues of material fact remain. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217,
222-23 (Tex. 1999). The defendant must support its motion with proper summary judgment
evidence. Tex. R. Civ. P. 166a(c). Only if the defendant meets its burden does the burden
shift to the plaintiff, as the nonmovant, to establish that a genuine issue of material fact
remains. Id.

 The defendant's burden in moving for summary judgment under rule 166a(i) is less
strenuous. The defendant must establish that "after adequate time for discovery . . . there
is no evidence of one or more essential elements of a claim or defense on which an
adverse party would have the burden of proof at trial." Id. at rule 166a(i); Fort Worth
Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 98 (Tex. 2004). The burden then shifts
to the plaintiff, in its attempt to defeat the summary judgment motion, to produce sufficient
evidence to raise a genuine issue of material fact supporting the disputed issue. Forbes
Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003). The plaintiff must
produce more than a scintilla of probative evidence, meaning that it must not be "so weak
as to do no more than create a mere surmise or suspicion of a fact." King Ranch v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003).

C. Issue 1: Dominion's Royalty Obligations

 1. Obligations under the express covenants of the lease

 In reviewing the Migls' live petition we note their implicit allegation that gas was sold
both on and off the premises and that all of the gas was sold below market value, thereby
violating the express covenant to sell gas for market value and the implied covenant to
reasonably market. Under the bifurcated royalty provision, gas sold off-premises is
governed by a market value formula and gas sold on-premised is governed by an amount
realized (or proceeds-based) calculation. Therefore, at the outset we must determine which
royalty provision applies to the instant case because Dominion is required to calculate
royalties owed to the Migls based on the bifurcated royalty provisions contained in the lease
agreement. See Alameda Corp. v. Transamerican Natural Gas Corp., 950 S.W.2d 93, 97
(Tex. App.- Houston [14th Dist.] 1997, writ denied) (recognizing that royalty payments must
be determined from provisions of oil and gas lease). 

 Dominion asserted that all of the gas sales took place at meters located on the
leasehold. It offered affidavits from its employees and the gas purchase agreement, which
indicated that all of the natural gas extracted from the lease was sold at a meter located on
the leasehold. (4) The Migls failed to offer controverting evidence to the trial court, and their
brief does not contest Dominion's assertion of on premises sales. All the Migls have to
support their claim that Dominion violated the express covenant of the lease by not selling
gas at market value are pleaded factual allegations. Pleadings do not constitute summary
judgment evidence. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678
(Tex. 1979). Consequently, the Migls' claim for violation of the express covenant to sell gas
at market value did not survive summary judgment because the uncontroverted evidence
shows all of the gas was sold on premises. Therefore, only the proceeds based royalty
calculation is applicable, while the market based formula is inapplicable. See Amoco Prod.
Co. v. First Baptist Church of Pyote, 611 S.W.2d 610, 610 (Tex. 1980) ("The parties can
draft either a 'market value' or a 'proceeds' royalty provision, and their intent will be followed
by the courts.").

 2. Obligations under the implied covenants of the lease

 In order to understand the Migls implied covenant claim, we must determine which
covenants are applicable. The broad implied covenants of an oil and gas lease are: (1) to
develop the premises, (2) to protect the leasehold, and (3) to manage and administer the
lease. Amoco Prod. Co. v. Alexander, 622 S.W.2d 563, 567 (Tex. 1981). Included within
the covenant to manage and administer the lease is the duty to reasonably market the oil
and gas produced from the premises. Cabot Corp. v. Brown, 754 S.W.2d 104, 106 (Tex.
1987). The implied covenant to reasonably market the lease's natural gas is applicable
when the royalty clause calls for an amount-realized (or proceeds) based calculation. Cf.
Union Pac. Res. Group, Inc. v. Hankins, 111 S.W.3d 69, 70 (Tex. 2003) (holding that a
covenant to obtain the best price reasonably attainable is implied under Texas law only to
proceeds leases, not to market-value leases). The duty to reasonably market oil and gas
obligates a lessee to market the production with due diligence and obtain the best price
reasonably possible. Brown, 754 S.W.2d at 106. 

 The facts of the present case are inversely related to the facts of a royalty dispute
that the Texas Supreme Court has already confronted. In that case, the royalty provision
contained a bifurcated clause exactly like the one in the present case, except the gas sales
took place off-premises. See Yzaguirre v. KCS Resources, Inc., 53 S.W.3d 368, 370 (Tex.
2001). The lessee in Yzaguirre entered into a twenty-year gas purchase agreement in
which buyer agreed to purchase gas for a fixed price. Id. Over the course of the
agreement, the contract price rose above the market for natural gas and lessee paid lessors
a royalty based on the market value, as directed by the lease, rather than a royalty based
on the amount realized value. Id. Lessors sued lessee claiming a breach of the implied
covenant to reasonably market. Id. Lessee was granted summary judgment. Id. The
Texas Supreme Court affirmed the trial court's summary judgment. Id. at 374. (refusing
to use an implied marketing covenant to negate the express royalty provisions in the leases
and transform the "market value" royalty into a "higher of market value or proceeds"
royalty.). 

 The Migls reliance on the best price reasonably possible portion of the duty to
reasonably market to create a fact issue is misplaced. The Texas Supreme Court has
noted that "market value may be wholly unrelated to the price the lessee receives as the
proceeds of a sales contract." Id at 372. The instant case is no different than Yzaguirre. 
In this case, the lessee engaged in a long-term contract that was arguably less lucrative
than a contract relying on market fluctuations. Yet, despite the Migls's market value
evidence, we look to the proceeds clause and the jurisprudence surrounding the applicable
implied covenants. Id. at 374. 

 An action based on the implied covenant to reasonably market focuses on the
behavior of the lessee rather than on evidence of other sales, and asks whether the lessee
acted as "a reasonably prudent operator under the same or similar facts and
circumstances." Union Pac. Res. Group, Inc. v. Hankins, 111 S.W.3d 69, 71 (Tex. 2003);
see Alexander, 622 S.W.2d at 567-68. The Migls offered no evidence of how Dominion
failed to act as a reasonably prudent operator other than asserting the generic allegation
of selling gas below market value. They claim that Dominion's allegedly tardy request of
the basket price is some evidence of negligence on Dominion's part. The allegation does
not rise beyond suspicion of a fact. Any inference of negligence by Dominion's allegedly
tardy request is not supported by evidence that such a request would have yielded higher
profits. Assuming the basket price was higher than the contract price Dominion was
receiving, the gas purchase agreement's mutual assent requirement coupled with HPL's
prompt refusal show that a request for basket pricing was not a viable option.

 Reviewing the evidence in the light most favorable to the Migls, we hold that no
genuine issue of material fact remains regarding whether Dominion failed to act as a
reasonably prudent operator. See Steel, 997 S.W.2d at 222-23. The Migls' first issue is
overruled.

D. Issue 2: Fraud Claims

 By their second issue, the Migls complain that the trial court improperly granted
summary judgment on their fraud claims. In their live petition the Migls raised common law
and statutory fraud claims against Dominion. The theory is that by tendering royalty
payments to the Migls, Dominion represented that the royalties were the best price
reasonably possible when in fact the royalties were for gas sold at below market prices. 

 The Migls common law fraud claims fail. To establish common law fraud, a plaintiff
must prove: "(1) a material representation was made; (2) the representation was false; (3)
when the representation was made, the speaker knew it was false or made it recklessly
without any knowledge of the truth and as a positive assertion; (4) the representation was
made with the intention that it be acted upon by the other party; (5) the party acted in
reliance upon the representation; and (6) the party suffered injury." Johnson & Higgins of
Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998). Assuming, without
deciding, that royalty payments constitute a representation, Dominion has established as
a matter of law that it was receiving the only price feasibly available - that being the contract
price. The second and third elements of a common law fraud claim are therefore missing.

 The Migls also allege statutory fraud. See Tex. Bus. & Com. Code Ann. § 27.01
(Vernon 1987). Section 27.01 provides for a statutory cause of action for fraud in real estate
and stock transactions. Id. It only applies to misrepresentations of material fact made to
induce another to enter into a contract for the sale of land or stock. Burleson State Bank
v. Plunkett, 27 S.W.3d 605, 611 (Tex.App.-Waco 2000, pet. denied). Because Dominion
is a successor-in-interest to the original lessee, section 27.01 does not apply. The Migls'
second issue is overruled.

IV. CONCLUSION

 The judgment of the trial court is affirmed. Tex. R. App. P. 43.2(a).

 

 

 ROGELIO VALDEZ,

 Chief Justice



Memorandum Opinion delivered and filed 

this the 15th day of February, 2007. 

 


1. The Migls's live petition contains a section titled, "Cause of Action for Breach of Lease and Breach
of Contract." That section advances claims against Dominion based upon the lease's covenants, but it does
not articulate a breach of contract claim stemming from the market value provisions found in the gas purchase
agreement executed by Costilla and HPL. 
2. The first two-thirds of Dominon's renewed motion for summary judgment asks for a traditional
summary judgment, while the last third requests a no-evidence summary judgment. 
3. Although the Migls objected to Dominion's affidavits below, their objections are not presented in any
of the issues on appeal. Therefore, we need not address them. Tex. R. App. P. 38.1(e).
4. Gas sold on the leasehold shall be treated as sold at the wells for royalty calculations purposes. See
Exxon Corp. v. Middleton, 613 S.W.2d 240, 243 (Tex. 1981) (holding that "sold at the wells" means sold at
the wells within the lease)