SHAKOPEE MDEWAKANTON
SIOUX (DAKOTA) GAMING
ENTERPRISE, Appellant,

v.

Leonard PRESCOTT, individually, and as current and former officer and/or director of Little Six, Inc., Respondent.

No. A09–684.

Court of Appeals of Minnesota.

Feb. 23, 2010.

321

Brian B. O'Neill, Richard A. Duncan, Collette L. Adkins Giese, Faegre & Benson LLP, Minneapolis, MN; and Kurt V.

Bluedog, Bluedog, Paulson & Small, PLLP, Bloomington, MN, for appellant.

David G. Keller, Grannis & Hauge, P.A., Eagan, MN, for respondent.

Considered and decided by BJORKMAN, Presiding Judge; KLAPHAKE, Judge; and HALBROOKS, Judge.

## OPINION

BJORKMAN, Judge.

Appellant challenges a district court order denying the enforcement of a tribal court money judgment. Because we conclude that the district court improperly applied the conflicting-judgments provision of the UFCMJRA, we reverse and remand for further proceedings.

## FACTS

Respondent Leonard Prescott was the chief executive officer and chairman of the board of directors of Little Six, Inc., a gaming enterprise owned by the Shakopee Mdewakanton Sioux Community, from 1991 to 1994. Prescott was also the chairman of the community from 1987 to 1992. In 2005, the community transferred ownership of Little Six to appellant Shakopee Mdewakanton Sioux (Dakota) Gaming Enterprise (the Enterprise), a noncorporate tribal entity.

In 1993, the community adopted a gaming ordinance that established licensing requirements for certain employees, including Prescott. The licensing system was administered by the Shakopee Mdewakanton Sioux Community Gaming Commission. Prescott applied to the commission for a license and received a temporary license pending a background investigation. In May 1994, the commission denied Prescott's application and suspended his temporary license, finding that he had en-

gaged in negligence, fraud, and misconduct. This finding was based on Prescott's failure to disclose, in his application, his 1971 conviction of a felony burglary offense in Ramsey County.[1]

After conducting hearings in May and June 1994, the commission issued an order affirming the suspension of Prescott's temporary license and denying his application for a permanent license. Prescott appealed the commission's decision to the tribal court (licensing case), arguing that political and personal bias on the part of two commissioners violated his due-process rights and required their removal from further proceedings. The tribal court agreed, but the tribal court of appeals reversed, determining that Prescott had failed to submit actual evidence of bias.

Prescott also challenged the merits of the commission's decision. The lengthy appeal process culminated in the tribal court affirming the commission's order. The tribal court of appeals affirmed the tribal court's decision.

While the licensing case proceeded, Little Six initiated a separate action in tribal court, alleging that Prescott and another employee had engaged in misconduct including breach of fiduciary duty, fraud, negligent misrepresentation, and breach of contract (misconduct case). The breach-of-fiduciary-duty claim, in particular, related to the conduct at the heart of the commission's decision—Prescott's failure to disclose his prior conviction in his license application. In 1999, the tribal court granted summary judgment to Prescott and his codefendant on many of these claims, and in 2000 the tribal court of appeals ruled that Prescott and his codefendant were entitled to summary judgment on all of Little Six's claims, including those that were similar to the claims alleged in the licensing case.

This appeal relates to a third action between Prescott and tribal entities. Little Six agreed to provide legal counsel to Prescott in the licensing case in exchange for Prescott's agreement to reimburse Little Six for legal fees in the event that he was "finally adjudged to be liable for negligence, fraud, or misconduct" in the performance of his duties for Little Six. In 2000, Little Six commenced an action in tribal court seeking reimbursement of the legal fees Little Six paid on Prescott's behalf in the licensing case (reimbursement case). Prescott argued that because the misconduct case was dismissed as a matter of law, the reimbursement claims are barred by res judicata. The tribal court rejected this argument and awarded damages to the Enterprise, as assignee and successor in interest to Little Six, in the amount of $516,871.46 (money judgment). In August 2006, the tribal appellate court affirmed the money judgment.

Because Prescott lives on tribal land and the monthly payments he receives from the tribe are exempt from liens, the Enterprise is unable to execute on the money judgment within the community. Accordingly, the Enterprise docketed the money judgment in Scott County District Court, and initially obtained a writ of execution.[2] But after further proceedings, the district

1. Prescott completed his probation in 1972, and the charge was reduced to a misdemeanor under Minn.Stat. § 609.13 (1970). The offense was expunged from his criminal record in 1992.

2. In January 2006, respondent's credit union account balance of $863.29 was collected to satisfy appellant's judgment. A second attempt to identify and collect assets held by respondent ended when the Scott County Sheriff's Office, after a diligent search, could not identify any personal property that respondent held in Scott County.

court determined that while the money judgment may be entitled to recognition under the UFCMJRA, Prescott must be afforded an opportunity to show that there are grounds for nonrecognition. Before the hearing on this issue, the case was reassigned to another district court judge.

In November 2008, the district court conducted a hearing on whether to recognize and enforce the money judgment. The district court concluded that resolution of this issue is governed by Minn. R. Gen. Pract. 10.02, with guidance from the UFCMJRA. The district court determined that the money judgment conflicts with the judgment dismissing Little Six's claims against Prescott in the misconduct case. But although it concluded that this conflict is determinative of the recognition issue, the district court stated that two additional factors identified in rule 10.02— due process and public policy—also favor nonrecognition. Therefore, the district court ruled that the money judgment would not be recognized or enforced in Scott County. This appeal follows.

## ISSUE

Under the conflicting-judgments provision of the UFCMJRA, do grounds for nonrecognition of a foreign judgment exist when the judgment sought to be enforced purportedly conflicts with another judgment from the same jurisdiction?

## ANALYSIS

### I.

■ Where mandated by state or federal statute, tribal court judgments must be recognized and enforced by the district court. Minn. R. Gen. Pract. 10.01. But where no such statute applies, recognition and enforcement of a tribal court judgment lies within the district court's discretion. Minn. R. Gen. Pract. 10.02. Rule 10.02(a) enumerates several factors the court may consider in exercising its discretion:

(1) whether the party against whom the order or judgment will be used has been given notice and an opportunity to be heard or, in the case of matters properly considered ex parte, whether the respondent will be given notice and an opportunity to be heard within a reasonable time;

(2) whether the order or judgment appears valid on its face and, if possible to determine, whether it remains in effect;

(3) whether the tribal court possessed subject-matter jurisdiction and jurisdiction over the person of the parties;

(4) whether the issuing tribal court was a court of record;

(5) whether the order or judgment was obtained by fraud, duress, or coercion;

(6) whether the order or judgment was obtained through a process that afforded fair notice, the right to appear and compel attendance of witnesses, and a fair hearing before an independent magistrate;

(7) whether the order or judgment contravenes the public policy of this state;

(8) whether the order or judgment is final under the laws and procedures of the rendering court, unless the order is a non-criminal order for the protection or apprehension of an adult, juvenile or child, or another type of temporary, emergency order;

(9) whether the tribal court reciprocally provides for recognition and implementation of orders, judgments and decrees of the courts of this state; and

(10) any other factors the court deems appropriate in the interests of justice.

Neither party challenges the district court's determination that rule 10.02 is the applicable law. But the Enterprise argues that the district court erred by relying primarily on one UFCMJRA nonrecognition factor and ignoring the majority of the enumerated rule 10.02(a) factors. Because we are responsible for deciding cases in accordance with the law, *Greenbush State Bank v. Stephens,* 463 N.W.2d 303, 306 n. 1 (Minn.App.1990), *review denied* (Minn. Feb. 4, 1991), we initially consider whether rule 10.02 is the controlling law and its relationship to the UFCMJRA.

■ The determination of whether a statute applies and the interpretation of that statute are questions of law, which this court reviews de novo. *In re Marriage of Goldman,* 748 N.W.2d 279, 282 (Minn.2008). The UFCMJRA provides that a foreign money judgment is "enforceable in the same manner as the judgment of another state which is entitled to full faith and credit" unless the court determines that, based on the comity factors described in the UFCMJRA, the judgment is not conclusive. Minn.Stat. § 548.35, subds. 3, 4 (2008). "Foreign state" is defined in the UFCMJRA as "any governmental unit other than the United States or any state, district, commonwealth, territory, or insular possession of the United States." *Id.,* subd. 1 (2008). The breadth of this definition would appear to include Indian tribes.

But it is not clear that the UFCMJRA was intended to apply to tribal court money judgments. In that regard, we are guided by the comments of the Minnesota Supreme Court Advisory Committee on the General Rules of Practice for the District Courts made in connection with the adoption of rule 10.[3] The committee acknowledged the broad scope of the UFCMJRA, stating that "[t]ribal court money judgments fall within [its] literal scope" and that the UFCMJRA "may guide Minnesota courts considering money judgments." Minn. R. Gen. Pract. 10.02 advisory comm. cmt. But the committee further stated that "[i]n general, money judgments of tribal courts are not entitled to full faith and credit under the Constitution, and the court is allowed a more expansive and discretionary role in deciding what effect they have. Rule 10.02(a) is intended to facilitate that process." *Id.* The committee's comments are persuasive, and we conclude that Minn. R. Gen. Pract. 10.02, with guidance from the UFCMJRA, governs this case.

## II.

■ We now turn to the Enterprise's arguments that the district court erred by failing to consider each of the rule 10.02(a) factors, and in relying on the conflicting-judgments provision of the UFCMJRA. By its terms, rule 10.02(a) provides that "enforcement of a tribal court order or judgment is discretionary" and that in exercising this discretion, the district court *may* consider the factors described therein. Absent from the rule is any requirement that the district court consider and make an express determination as to each and every listed factor. And rule 10.02(a)(10) permits a district court to consider, in addition to the enumerated factors, "any other factors the court deems appropriate in the interests of justice." The UFCMJRA provisions fall within the

**3.** *See generally* Kevin K. Washburn & Chloe Thompson, *A Legacy of Public Law 280: Comparing and Contrasting Minnesota's New Rule* *for the Recognition of Tribal Court Judgments with the Recent Arizona Rule,* 31 Wm. Mitchell L.Rev. 479, 507–518 (2004).

interests-of-justice factor. The Enterprise's claims of error with respect to the district court's failure to address every rule 10.02(a) factor are unavailing.

■ The dispositive issue is whether the district court abused its discretion in applying the conflicting-judgments provision of the UFCMJRA. Because the determinative facts of this case are not in dispute and the district court based its decision on the application of the UFCMJRA, we will reverse the district court only if we conclude that it misapplied the law. *See Ver Kuilen v. Ver Kuilen*, 578 N.W.2d 790, 792 (Minn.App.1998) (stating that a district court abuses its discretion when it misapplies the applicable law).

Under the UFCMJRA, money judgments from foreign jurisdictions are not entitled to recognition and enforcement when certain comity factors described in the statute are not present, such as when the judgment "conflicts with another final and conclusive judgment." Minn.Stat. § 548.35, subd. 4(b)(4). The district court concluded that the tribal court judgment in the reimbursement case conflicts with the tribal court judgment in the misconduct case and that this conflict constitutes grounds for nonrecognition under the UFCMJRA.

There is a dearth of authority on the meaning of the conflicting-judgments provision. The language in Minnesota's act is identical to the applicable language in the UFCMJRA, as composed by the National Conference of Commissioners on Uniform State Laws (NCCUSL), and the UFCMJRA as adopted by other states. *See, e.g.,* NCCUSL, Uniform Foreign–Country Money Judgments Recognition Act (2005), http://www.law.u penn.edu/bll/archives/ulc/ufmjra/2005final.pdf; *Byblos Bank Europe, S.A. v. Sekerbank Turk Anonym Syrketi,* 10 N.Y.3d 243, 855 N.Y.S.2d 427, 885 N.E.2d 191, 193

(2008) (citing the New York version); *Brosseau v. Ranzau,* 81 S.W.3d 381, 389–90 (Tex.App.2002) (citing the Texas version). But neither case law nor the UFCMJRA provides precise guidance as to the meaning of the conflicting-judgments provision. *See Byblos,* 855 N.Y.S.2d 427, 885 N.E.2d at 193 (observing that the UFCMJRA "does not specify which, if any, of the two conflicting foreign judgments is entitled to recognition").

The NCCUSL has noted this lack of clarity and discussed, as an example, an analogous provision in the Hague Convention Draft on Exclusive Choice of Court Agreements, which states that recognition of a foreign judgment may be denied when

the judgment is inconsistent with a judgment given in a dispute between the same parties in the requested State, or it is inconsistent with an earlier judgment given in another State between the same parties and involving the same cause of action, provided that the earlier judgment fulfils the conditions necessary for its recognition in the requested State.

NCCUSL, Uniform Foreign–Country Money Judgments Recognition Act (with Reporter's Notes), October 2004, http://www.law.upenn.edu/bll/archives/ulc/ufmjra/Oct2004MtgDraft.htm (quotation omitted.) Although this language was not incorporated into the UFCMJRA, the discussion is instructive. The NCCUSL's favorable reference to the description of conflicting judgments as those between the foreign state and the *requesting* state, or between the foreign state and *another* state, suggests that, for purposes of the UFCMJRA, conflicting judgments come from different jurisdictions.

Case law from other jurisdictions provides stronger support for the proposition that the conflicting-judgments provision of

the UFCMJRA is intended to apply to conflicting judgments from different jurisdictions. In *Byblos,* the New York Court of Appeals declined to recognize a Belgian judgment on the ground that the Belgian court did not consider the res judicata effect of an earlier Turkish judgment. 855 N.Y.S.2d 427, 885 N.E.2d at 194. The *Byblos* court concluded that, in refusing to recognize the Turkish judgment, the Belgian court "departed from generally-accepted principles of res judicata and comity," thus justifying nonrecognition under the UFCMJRA. *Id.*

■ Likewise, in *Brosseau,* a Texas appellate court refused to recognize a 1996 Mexican judgment on the ground that it conflicted with a 1994 United States bankruptcy court order on the issue of whether the defendant owned stock in a particular corporation. 81 S.W.3d at 389–91. Unlike *Byblos,* which involved conflicting foreign judgments, *Brosseau* involved a foreign judgment that conflicted with a domestic judgment. But the decisions in both *Brosseau* and *Byblos* were based in part on the UFCMJRA's reflection of comity principles, particularly the principle that domestic courts should give due regard to the preclusive effects of prior judgments from foreign jurisdictions. *See Byblos,* 855 N.Y.S.2d 427, 885 N.E.2d at 193 ("The doctrine of comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." (quotation omitted)); *Brosseau,* 81 S.W.3d at 388 ("UFCMJRA is in some respects a codification of the principles of comity and in that sense reflects public policy on the preclusive effect to be given foreign litigation."). Under this same principle, domestic courts may refuse to enforce judgments of foreign courts that ignore the preclusive effects of earlier judgments from other foreign jurisdictions.

*See Byblos,* 855 N.Y.S.2d 427, 885 N.E.2d at 194 (concluding that a New York court properly exercised its discretion in refusing to honor a Belgian judgment because the Belgian court refused to honor an earlier judgment from a German court).

Here, in affirming the money judgment in the reimbursement case, the tribal court of appeals explicitly considered and rejected Prescott's argument about the preclusive effect of the judgment in the misconduct case. Likewise, the tribal appellate court in the misconduct case expressly stated that its decision was not intended to and did not conflict with its decision in the licensing case. Rather than basing its reasoning on the preclusive effects of the tribal appellate court's decisions, the district court declined to recognize the money judgment because of its perceived conflict with the tribal court's judgment in the misconduct case. In reaching this conclusion, the district court closely examined the claims, issues, and tribal court's analyses in the licensing, misconduct, and reimbursement cases. The Enterprise argues that the district court erred in its analysis and in finding the judgments to be in conflict. We agree.

■ Not only does the district court's decision essentially ignore the tribal court's determination that the judgments do not conflict, but the district court's analysis of the issue appears to be an independent review of the merits of a foreign judgment made before deciding whether to recognize it; a violation of the comity principles upon which the UFCMJRA is based. *See Medellin v. Dretke,* 544 U.S. 660, 670, 125 S.Ct. 2088, 2094, 161 L.Ed.2d 982 (2005) ("It is the long-recognized general rule that, when a judgment binds or is respected as a matter of comity, a 'let's see if we agree' approach is out of order."); *Hilton v. Guyot,* 159 U.S. 113, 202–03, 16 S.Ct. 139, 158, 40

L.Ed. 95 (1895) (stating that where the "comity of this nation" calls for recognition of a foreign judgment, "the merits of the case should not ... be tried afresh ... upon the mere assertion ... that the judgment was erroneous in law or in fact"). A determination that two judgments from the same jurisdiction conflict would generally constitute an independent review of that jurisdiction's application of res judicata or collateral estoppel and would similarly violate principles of comity. We are left to conclude that the conflicting-judgments provision of the UFCMJRA was not intended to apply when the allegedly conflicting judgments are issued by the same jurisdiction. Moreover, the district court's independent review of the tribal court's application of res judicata and collateral estoppel violates our holding in *Lemke ex rel. Teta v. Brooks* that "state courts do not have jurisdiction to conduct even limited review of tribal court decisions." 614 N.W.2d 242, 245 (Minn.App.2000), *review denied* (Minn. Sept. 27, 2000).

We conclude that the district court misapplied the conflicting-judgments provision of the UFCMJRA and committed legal error by independently reviewing the merits of the tribal court judgments. These legal errors constitute abuse of discretion. Accordingly, we reverse the district court's order and remand for further proceedings consistent with this opinion.

## III.

Although the district court explicitly based its decision not to recognize the money judgment on the conflicting-judgments provision, the court also noted that the due-process and public-policy factors enumerated in rule 10.02 favor nonenforcement. Because we have concluded that the district court abused its discretion by misapplying the law on the determinative conflicting-judgments provision, we need not address the other rule 10.02 factors. But we note that the district court's expressed concern about the alleged partiality of members of the gaming commission was considered and rejected by the tribal court of appeals, and Prescott does not dispute the fairness of the tribal trial or appellate court proceedings or decisions. Once again, the district court's consideration of and conclusion concerning the fairness of Prescott's license-revocation proceedings resembles an independent review of the tribal appellate court's determination that Prescott failed to present adequate evidence of bias. *See id.* (stating that "state courts do not have jurisdiction to conduct even limited review of tribal court decisions").

## DECISION

The district court's decision to apply rule 10.02 and to rely on the UFCMJRA for guidance was correct. But because the conflicting-judgments provision of the UFCMJRA does not apply to judgments from the same jurisdiction, the district court abused its discretion when it concluded that this provision prevents recognition of the tribal court money judgment. Accordingly, we reverse the district court's order and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**