W. EUGENE DAVIS, Circuit Judge,
concurring in part and dissenting in part:
I agree with my colleagues in the majority as to the conclusions set forth in Part I of their opinion. One litigant’s initiation of a parallel lawsuit in a foreign country while a domestic lawsuit remains pending is not a basis on which a district court may deny comity to the resulting foreign judgment.[1] I disagree, however, with Part III of the majority’s opinion. I therefore do not reach the difficult question of first impression under Mississippi law addressed in the majority’s Part II.[2]
As explained below, even if the Swareks’ voluntary dismissal of their contract claim “with prejudice” under Rule 41 of the Mississippi Rules of Civil Procedure operated as a final judgment as to the Derr Heirs, that final judgment does not conflict with the German court’s decision in this case. On the contrary, the German court’s decision is in accord with the Swareks’ Rule 41 dismissal. That is, the Swareks neither recovered any damages nor received any other remedy on their claim for breach of contract. As for the costs award rendered during the German proceedings, the German court stated explicitly that those costs would have accrued even if the German court had ruled on the basis of res judicata *445 rather than on the substance of the Swar-eks’ underlying contract claim.
Accordingly, there is no conflict between the two purported final judgments in the present case. There is no recognized basis, therefore, on which to deny comity.[3] For these reasons, I respectfully dissent.
I.
The majority explains that Mississippi courts would deny comity to the German judgment because “[t]he German Higher Regional Court’s failure to respect the Swareks’ dismissal with prejudice ... violated Mississippi public policy and rendered meaningless the right of the Swar-eks to put an end to litigation of their claims.” In support, the majority cites several general statements by Mississippi courts regarding the importance of the public policies underlying the doctrine of res judicata. The majority identifies no decisions by Mississippi courts, however, that have ever denied comity to a judgment based on a foreign court’s “failure to respect” a res judicata decision rendered earlier in time by a Mississippi court. Nor does the majority identify any such decisions by the federal courts. Nor does the majority identify any such decisions by the courts of any other state in the United States.[4]
The majority’s “failure to respect” rationale bears some resemblance to a well-recognized exception to the doctrine of comity. This exception is applicable in cases where a foreign judgment “conflicts with another final judgment.”[5] Certainly, as the Eleventh Circuit explained in one of the cases cited favorably by the majority, “attempts to enforce conflicting judgments raise major concerns of international comi *446 ty.”[6] This sensible exception to the doctrine of comity has been codified as statutory law in Texas and many other states under the Uniform Foreign Money-Judgments Recognition Act.[7] This exception to the doctrine of comity also comports with the public policy of decisional finality underlying Mississippi’s doctrine of res judi-cata.[8]
It is possible, therefore, that Mississippi’s public policy does require denial of enforcement to a foreign judgment that “conflicts” with a final judgment rendered earlier in time[9] by a Mississippi court. Even if this is correct, however, there is no such conflict between the German judgment and the Swareks’ Rule 41 dismissal in the present case.
II.
Roughly three pages of the German Higher Regional Court’s ruling address the substantive merits of the Swareks’ contract claim against Derr and the Derr Heirs.[10] From this, we can plainly see that the German Higher Regional Court did not conclude that the Swareks’ contract claim was extinguished by the Rule 41 dismissal’s purported res judicata effect. But the Derr Heirs prevailed nonetheless because, according to the German Higher Regional Court, the Swareks’ claim failed on its merits.[11] As the successful parties in the litigation, therefore, the Derr Heirs were awarded costs under § 91(1) of the German Code of Civil Procedure.[12]
Had the German Higher Regional Court ruled on the basis of res judicata, the result would have been identical. That is, the Swareks would have recovered no damages nor received any other relief on their contractual claims, and the Derr Heirs would have been awarded costs under German law as the successful parties. Accordingly, even though the German *447 judgment relies on a legal basis that was entirely separate and distinct from Mississippi’s doctrine of res judicata, the enforcement of this judgment does not conflict with the res judicata outcome that the Swareks arguably achieved by their Rule 41 dismissal with prejudice.
The absence of any conflict is demonstrated, in particular, by two aspects of the German Higher Regional Court’s reasoning. First, as the majority acknowledges, the German Higher Regional Court explicitly pretermitted the applicability of res judicata. In its written opinion, the German Higher Regional Court explained that the question of whether the Swareks’ voluntary “withdrawal of the complaint” gave rise to “a procedural preclusion (‘res judi-cata’) ... c[ould] remain open.”[13] Logically, if there were an actual conflict between the proposed res judicata outcome of the Rule 41 dismissal and the substantive analysis of the Swareks’ contract claim, the German Higher Regional Court could not have pretermitted this obviously dispositive issue. The German Higher Regional Court only had the luxury of leaving the res judicata question “open” because ruling directly on the contract claim would lead to precisely the same result. In much the same way, we see that the German Higher Regional Court also pretermitted the question of whether the contract claim was untimely.[14] Needless to say, of course, our own court often follows the same approach. Where several alternative arguments point toward a single conclusion, we frequently decide only the disposi-tive issue and pretermit the remaining questions.[15]
Second, as the German Higher Regional Court also stated explicitly, costs would have accrued even if the doctrine of res judicata had been the basis of the German judgment. According to the German Higher Regional Court, “[e]ven if’ the Swareks’ voluntary dismissal had res judi-cata effect, the Derr Heirs would nonetheless “be required to prove that the res judicata effect extended] to them” in “the event of an action filed against them” and “any ambiguity w[ould] be resolved at their expense.”[16] As this explanation demonstrates, even a result predicated on res judicata would have given rise to costs in the German litigation. The record presents no reason to think that such costs would not also form the basis for a costs award under § 91(1) of the German Code of Civil Procedure.[17]
*448 Indeed, as has often been explained by the Second, Sixth, and District of Columbia Circuits, after “a judgment is reached” in one of two “[pjarallel proceedings in the same in personam claim,” the first forum’s judgment must then be “pled as res judica-ta in the other.” [18] These statements explicitly contemplate at least one more stage of litigation in the second forum even after final judgment has been rendered in the first forum — the post-judgment proceeding in which the parties’ arguments regarding res judicata are asserted and considered. The doctrine of res judicata does not obligate the second forum to forgive the costs that would ordinarily accrue during this post-judgment litigation. Nor does the doctrine of res judicata obligate the second forum to immediately stop its work sua sponte so that no further litigation costs will accrue against the unsuccessful litigant.
Nor would there seem to be any obligation, in the present case, for the German courts to forgive those costs that had already accrued before the Swareks’ Rule 41 dismissal. It is true, as the majority emphasizes, that the German Higher Regional Court decided the Swareks’ appeal on January 12, 2012 — nearly two years after the Swareks’ Rule 41 dismissal occurred on May 10, 2010. But the Swareks’ Rule 41 dismissal also did not occur until more than a year after the Derr Heirs’ lawsuit had been filed in the German trial court on March 9, 2009. The majority asserts that the German Higher Regional Court’s costs award “rendered meaningless the right of the Swareks to put an end to litigation of their claims.” But surely any right to terminate one’s claims under Mississippi law does not entail the power to escape the costs that one has already accrued during previous or ongoing litigation in a foreign jurisdiction.
I therefore do not understand the majority’s conclusion that “[i]f the Derr Heirs had not obtained a declaratory judgment of non-liability on the identical claims that the Swareks had dismissed with prejudice nearly two years earlier, no order for costs would have issued.” On the contrary, costs apparently would have accrued anyway during post-judgment litigation when the Rule 41 dismissal was “pled as res judicata” [19] in the German forum. Costs may also have accrued during the full year of litigation in the German trial court prior to the Rule 41 dismissal.
Accordingly, as is evident from the written opinion of the German Higher Regional Court, such costs would have been awarded against the Swareks under § 91(1) of the German Code of Civil Proce *449 dure “[e]ven if’ the Swareks’ voluntary dismissal had “cause[d] a procedural preclusion (‘res judicata’)” in the German proceedings.[20] The German court’s award of costs therefore is not in conflict with the purported res judicata effect achieved by the Swareks’ Rule 41 dismissal. It is in accord.
III.
As explained above, even if the Mississippi doctrine of res judicata had been applied in the German court precisely as the Swareks now articulate that doctrine, we would still be faced with a German declaratory judgment awarding no damages to the Swareks and awarding costs to the Derr Heirs. Only the reasoning of the declaratory judgment would be different.
At most, therefore, all that can be said is that the German Higher Regional Court did not apply Mississippi law on claim preclusion when it proceeded to analyze the merits of the Swareks’ contract claim. This was not necessarily even legal error. There are also courts in the United States that have applied the claim preclusion rules of the enforcement forum rather than those of the rendering forum when faced with enforcing a foreign country’s judgment.[21] In any event, even if the German Higher Regional Court’s costs award were predicated on a legal error, such error would not affect this case. Under Hilton v. Gwyot, 159 U.S. 113, 202-03, 16 S.Ct. 139, 40 L.Ed. 95 (1895), the Restatement (Second) of Conflict of Laws § 98, and numerous other federal and state authorities, a foreign court’s “error of law” is not a sufficient reason to deny comity to a foreign judgment.[22]
In summary, the majority’s interpretation of the public policy exception to the doctrine of comity is unsupported by Mississippi law or by any other authorities identified during these proceedings. This interpretation denies enforcement to a judgment that was evidently rendered by “a court of competent jurisdiction ... under a system of jurisprudence likely to secure an impartial administration of justice” absent any indication of “prejudice in the court ... or fraud in procuring the judgment.”[23] The majority’s interpretation recognizes, apparently for the first time, a broad exception to the doctrine of comity where a foreign court “fail[s] to *450 respect” a res judicata decision rendered earlier in time by a Mississippi court, even where the two resulting judgments are not in conflict with one another.
For these reasons, I would reverse the district court’s order granting the Swar-eks’ motion for judgment on the pleadings. Accordingly, I respectfully dissent.

. See Royal & Sun Alliance Ins. Co. of Canada v. Century Int’l Arms, Inc., 466 F.3d 88, 92 (2d Cir.2006) (“Generally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict.”); Gau Shan Co. v. Bankers Trust Co., 956 F.2d 1349, 1352 (6th Cir.1992) (“[Pjaral-lel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one jurisdiction which can be pled as res judicata in the other.” (quoting Laker Airways, Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 926-27 (D.C.Cir.1984) (alteration omitted))).

. In Part II, the majority explains that the Swareks’ voluntary dismissal of their lawsuit "with prejudice” under Rule 41 of the Mississippi Rules of Civil Procedure operates as a “final judgment on the merits” and entails claim-preclusive effect under Mississippi law. The majority concludes that this Rule 41 dismissal is entitled to claim-preclusive effect even as to Derr and the Derr Heirs, despite the Swareks’ failure to serve Derr and the Derr Heirs with process in the Mississippi proceedings. Neither the litigants nor the court, however, have identified any decisions by Mississippi courts in support of this con-elusion. The majority also fails to address Semtek International Inc. v. Lockheed Martin Corp., 531 U.S. 497, 502-03, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), in which the Supreme Court cautioned that “the term 'judgment on the merits’ ... has come to be applied to some judgments ... that do not pass upon the substantive merits of a claim and hence do not (in many jurisdictions) entail claim-pre-clusive effect.” Moreover, even if the Swar-eks’ Rule 41 dismissal does operate as a “judgment on the merits” as to the Swareks themselves, it is not clear that the Swareks’ Rule 41 dismissal necessarily entailed claim-preclusive effect as to Derr and the Derr Heirs absent effective service of process. As the majority recognizes, after all, claim preclusion results under Mississippi law where a final judgment is rendered by "a court of competent jurisdiction.” Garcino v. Noel, 100 So.3d 470, 476 (Miss.Ct.App.2012). But the Mississippi courts are "without jurisdiction” unless the "rules on service of process ... have ... been complied with....” See Turner v. Deutsche Bank Nat’l Trust Co., 65 So.3d 336, 339 (Miss.Ct.App.2011). Given my conclusions regarding the issues addressed in Part III of the majority’s opinion, however, this difficult question of Mississippi law need not be resolved in this case.

. As the majority correctly observes, " 'an abuse of discretion standard does not mean a mistake of law is beyond appellate correction.’ ” Sw. Livestock & Trucking Co. v. Ramon, 169 F.3d 317, 321 n. 3 (5th Cir.1999) (quoting Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). " 'The interpretation of ... judicial decrees’ ” is " 'traditionally an issue of law.’ ” Abbott Labs. v. TorPharm, Inc., 503 F.3d 1372, 1382 (Fed.Cir.2007) (quoting Schering Corp. v. Illinois Antibiotics Co., 62 F.3d 903, 908 (7th Cir.1995)); see also Levens v. Ballard, 361 Mont. 108, 255 P.3d 195, 197 (2011); Kannianen v. White, 788 N.W.2d 340, 342 (N.D.2010); Boyd v. Franklin, 919 So.2d 1166, 1171 (Ala.2005) ("'[T]he construction of a judgment is a matter of law....'”) (quoting Sheehan v. Balasic, 46 Conn.App. 327, 699 A.2d 1036, 1039 n. 4 (1997)); Laitram Corp. v. NEC Corp., 115 F.3d 947, 951 (Fed.Cir.1997) ("[Jjudicial rulings, like statutes, are official legal instruments of the sovereign. Generally, all such instruments — whether trial court orders or appellate court mandates — are reviewed de novo on appeal.”).

. Indeed, some authorities suggest that courts have discretion to enforce the later-in-time judgment. See Koehler v. Bank of Bermuda Ltd., M18-302(CSH), 2004 WL 444101, at *17 (S.D.N.Y. Mar. 10, 2004) ("If ... there is a conflict between the Arizona judgment and the Bermuda Declaratory Judgment that is material to recognition analysis, the 2001 Bermuda Declaratory Judgment must be preferred over the 1994 Arizona judgment of dismissal because it is latest in time.”); Ambatielos v. Found. Co., 203 Misc. 470, 116 N.Y.S.2d 641, 648 (N.Y.Sup.Ct.1952) (“Where, as here, the party against whom enforcement is sought had full opportunity in the second action to argue the binding force of the earlier judgment, there is every reason for applying the [last-in-time] rule to inconsistent judgments rendered by the tribunals of foreign nations.”); see also Byblos Bank Europe, S.A. v. Sekerbank Turk Anonym Syrketi, 10 N.Y.3d 243, 855 N.Y.S.2d 427, 885 N.E.2d 191, 193-94 (2008) ("The last-in-time rule, applicable in resolving conflicting sister state judgments under the Full Faith and Credit Clause of the Constitution ... need not be mechanically applied when inconsistent foreign country judgments exist.” (citations omitted)).

.See Restatement (Third) of Foreign Relations Law § 482(2)(e) (emphasis added).

. Turner Entm’t Co. v. Degeto Film GmbH, 25 F.3d 1512, 1521 (11th Cir.1994) (emphasis added).

. See Tex. Civ. Prac. & Rem.Code § 36.005(b)(4) (“A foreign country judgment need not be recognized if ... the judgment conflicts with another final and conclusive judgment....”); Beluga Chartering B.V. v. Timber S.A., 294 S.W.3d 300, 304 n. 1 (Tex.App.2009); Genujo Lok Beteiligungs GmbH v. Zorn, 943 A.2d 573, 577 n. 5 (Me.2008); HCA Health Servs. of Texas, Inc. v. Reddix, 151 N.C.App. 659, 566 S.E.2d 754, 756 (2002); Nadd v. Le Credit Lyonnais, S.A., 804 So.2d 1226, 1231 (Fla.2001).

. See Dep’t of Human Servs., State of Miss. v. Shelnut, 772 So.2d 1041, 1046 (Miss.2000); Little v. V & G Welding Supply, Inc., 704 So.2d 1336, 1337-38 (Miss.1997).

. But see Byblos Bank, 855 N.Y.S.2d 427, 885 N.E.2d at 193-94; Koehler, 2004 WL 444101, at *17; Ambatielos, 116 N.Y.S.2d at 648.

. See Derr Heirs’ Compl., Ex. B, 7-9 (Rec. Doc.1-3).

. See id.

. See id. at 10 ("The decision on the costs is based on § 91 para. 1, sentence 1 of the German Code of Civil Procedure....”); 7 Digest of Commercial Laws of the World § 119:1 ("§ 91(1) The unsuccessful party shall bear the costs of the action, including, but not limited to, compensating the opponent for his or her expenses to such extent as they were necessary for the appropriate prosecution or the defense of his or her rights.”); Burkhard Hess & Rudolf Huebner, Cost and Fee Allocation in German Civil Procedure, 11 IUS Gentium 151, 151, 154-55 (2012) ("Court charges are generally calculated on the basis of the amount in controversy.... As the court fees are solely based on the amount in controversy, they do not depend on the efforts actually undertaken by the Court. Neither the length nor the difficulty of the proceedings is taken into account. Court fees rise with the amount in controversy on a digressive scale.”).

. See Derr Heirs' Compl., Ex. B, 7 (Rec. Doc.1-3).

. See id. at 9 ("Thus, it can remain open whether the assertion of possible claims may also be barred by the statute of limitations.”).

. See, e.g., Freeman v. Texas Dep't of Criminal Justice, 369 F.3d 854, 863 n. 11 (5th Cir.2004); Fina, Inc. v. ARCO, 200 F.3d 266, 269 (5th Cir.2000).

. See Derr Heirs’ Compl., Ex. B, 7 (Rec. Doc.1-3).

. See 7 Digest of Commercial Laws of the World § 119:1; Hess & Huebner, 11 IUS Gentium at 151. The Swareks have implied that some relationship exists between the failure to apply res judicata and the costs award. In urging this inference, the Swareks emphasize the fact that the German appellate court awarded costs (after failing to apply res judi-cata), whereas the German trial court did not award costs. Compare Swareks' Answer and Affirmative Defenses, Ex. 13, 2-5 (Rec.Doc.6-13), with Derr Heirs’ Compl., Ex. B, 7 (Rec. Doc.1-3). But this inference is incorrect. As revealed by a comparison of the two German courts' opinions, the difference between their reasoning was unrelated to the doctrine of res judicata. For its part, the German trial court did not even mention res judicata. Indeed, the res judicata issue likely was never raised before the German trial court because the Swareks never appeared in those trial proceedings. The disagreement between the two German courts actually focused solely on the interpretation of Section 256 of the German *448 Code of Civil Procedure, which evidently governs German litigants’ right to a declaratory judgment. See 7 Digest of Commercial Laws of the World § 119:1. The Swareks argued before the German appellate court that the res judicata effect of their Rule 41 dismissal had barred the Derr Heirs from receiving a declaratory judgment under Section 256. The German appellate court rejected this argument. Derr Heirs’ CompL, Ex. B, 5-7 (Rec.Doc. 1-3) (“There also is no lack of interest in a declaratory judgment on the side of the plaintiffs.... The plaintiffs’ legitimate interest in legal protection did not terminate with the 'dismissal with prejudice,’ namely the withdrawal of the complaint with respect to the deceased Mr. Hermann Derr in the Mississippi lawsuit.”). In any event, this disagreement over German procedural law has no relevance to the task before our court.

. See Royal & Sun Alliance, 466 F.3d at 92 (emphasis added); Gau Shan, 956 F.2d at 1352 (same); Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1213 (D.C.Cir.1989) (same); China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir.1987) (same); Laker Airways, 731 F.2d at 926-27 (same).

. See Royal & Sun Alliance, 466 F.3d at 92 (emphasis added); Gau Shan, 956 F.2d at 1352; Laker Airways, 731 F.2d at 926-27.

. See Derr Heirs' Compl., Ex. B, 7 (Rec. Doc.1-3).

. See Andes v. Versant Corp., 878 F.2d 147, 149 (4th Cir.1989) (“When dealing with the preclusive effect of a foreign nation money judgment, some courts have seemed to employ a strict full faith and credit approach, while others have employed the res judicata rules of the forum state.”); Panama Processes, S.A. v. Cities Serv. Co., 796 P.2d 276, 291-92 & n. 70 (Okla.1990); see also United States v. Kashamu, 656 F.3d 679, 683 (7th Cir.2011) ("There is no consensus.”). The situation is different where both the rendering forum and the enforcement forum are bound by the Full Faith and Credit Clause of the United States Constitution. In such circumstances, the enforcement forum is obligated to apply the rendering forum's rules on res judicata. See id.

. Restatement (Second) of Conflict of Laws § 98 Comment D (1971, rev'd 1988) ("[T]he judgment will not be refused recognition on the ground that the rendering court made an error of law or of fact.”); see also, e.g., de Csepel v. Republic of Hungary, 714 F.3d 591, 606-07 (D.C.Cir.2013); Shakopee Mdewakanton Sioux (Dakota) Gaming Enter, v. Prescott, 779 N.W.2d 320, 325-27 (Minn.Ct.App.2010); Sari Louis Feraud Int’l v. Viewfinder, Inc., 489 F.3d 474, 479 (2d Cir.2007); Dart v. Dart, 460 Mich. 573, 597 N.W.2d 82, 85-86 (1999); Parsons v. Bank Leumi Le-Israel, B.M., 565 So.2d 20, 25 (Ala.1990); Panama Processes, 796 P.2d at 284; Banco Minero v. Ross, 106 Tex. 522, 172 S.W. 711, 714 (1915).

. See Hilton, 159 U.S. at 202, 16 S.Ct. 139.